## ROBB *v.* VOS.[1]

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 38.    Argued March 7, 1894. — Decided October 15, 1894.

When an attorney at law appears, without the knowledge or consent of his principal, on behalf of a defendant of record in an action at law of the existence of which the principal is ignorant, and consents to judgment and the issue of execution and the sale of the party's interest in real estate thereunder, and such sale is made, all the proceedings being regular on their face, the remedy of the injured party, when the facts come to his knowledge, is in equity.

A Circuit Court of the United States has jurisdiction of such a suit in equity, if the citizenship of the parties permits, although the proceedings at law under which the sale was made were had in a state court.

When a party has two remedies, inconsistent with each other, any decisive act by him, done with knowledge of his rights and of the facts, determines his election of his remedy.

When a claim is founded upon an act done without the claimant's knowledge and authority by a person assuming to act as his agent, the bringing of an action by him based upon that act is a ratification of it.

In this case it appeared that, after the said sale on execution of the plaintiff's interest in the realty, the proceeds passed, under order of court,

---

[1] The docket title of this case is *John Hampden Robb and Charles E. Strong, Trustees* v. *August Vos and William Stix.*

13

into the hands of said attorney of record for the benefit of his principal; and that the principal, after knowledge of all the facts, appeared in an action in the state court to which he had been summoned, and set up a claim to those proceeds, founded upon the proceedings under the judgment and execution. *Held*, that he was estopped from proceeding in equity, to set aside the sale on the ground that the attorney had no authority to appear for him, and that this estoppel was not affected by the fact that, before filing his bill in equity in the Circuit Court, he withdrew his pleading in the state court, and filed instead thereof a demurrer which was sustained.

On the facts in this case detailed in the opinion it is further *Held*, that, by the payment into court by the purchaser at the execution sale of the amount of the principal and interest due the plaintiff in the equity suit, and the conveyance of the lands to the purchaser, the latter became vested with a fee simple to said lands.

IN the year 1883, James Robb, a resident of Hamilton County, Ohio, died, leaving an estate, and James Hampden Robb, May R. Miltenberger, and Charlotte M. Pancoast as his surviving children. Charles A. Kebler, an attorney at Cincinnati, was appointed administrator. Mrs. Miltenberger and Ellen W. Robb had claims against the estate. A written agreement was executed by all concerned in the following terms:

" For an amicable settlement of all claims and controversy as to the estate of James Robb, deceased, late of Hamilton County, Ohio, it is mutually agreed by the undersigned as follows:

" That Mrs. Miltenberger's claim for an annuity of one thousand dollars, in accordance with her agreement with her father for her son's education from the time he became ten years of age until he became twenty-one years of age, which is now in suit No. 37,317 in the Superior Court of Cincinnati, and James Hampden Robb's claim in suit No. 37,820 in the same court, and Mrs. Ellen W. Robb's claim in suit No. 67,460 in the court of common pleas of the said county of Hamilton, are all hereby allowed by Charles A. Kebler, administrator, by and with the consent of the undersigned and at their request, as valid claims against said James Robb's estate, and shall be satisfied and discharged in the manner hereinafter provided and agreed to as to each of them, respectively; the claim of Mary Robb in suit No. 67,459, common pleas, to be also provided for and discharged as hereinafter agreed.

" 2. The deed which is alleged to have been made by the said James Robb on or about November 14th, 1879, to his daughter, Mrs. Isabella San Raman, conveying to her the tract of land near Cheviot, then owned and occupied by him, being without consideration and in consequence of his insolvency at that time wholly void as to his creditors, it is agreed by Charles A. Kebler, as administrator of said estate, that in pursuance of the statute in such case provided and by request of the other subscriber hereto he shall and will immediately bring an action for the recovery of the said land, or for the sale of said land and avoidance of the said pretended conveyance for the benefit of said estate and its creditors.

" 3. Besides the outstanding debts for personal and household expenses of James Robb, the cost of the monument heretofore agreed by the undersigned to be erected at Spring Grove Cemetery in memory of the said James Robb and all the proper costs and expenses of the administration of his estate and of the suit for the recovery of the land above mentioned, including the administrator's counsel's fees, shall first be paid out of the moneys now in his hands.

" 4. After paying the same the remaining moneys in his hands and the proceeds of the sale of the land aforesaid, or so much as necessary, shall be set apart and invested for two trust funds, as follows: One of the said funds shall be made sufficient to pay Mrs. Miltenberger the amount already due of said annuity, in compliance with the agreement made with her father for account of her son's education, and also to yield and pay the said annuity year by year until her son becomes twenty-one years of age, if he lives, and the surplus of said fund, if any remaining after he becomes of age, or in case he dies before becoming of age, shall fall into the residuary estate to be divided as hereinafter agreed ; the other of the said trust funds to be sufficient to secure and pay to Mrs. Ellen N. Robb an annuity of six hundred dollars ($600.00) for and during the term of her life, payable semi-annually, and to commence from the — day of ———, A.D. ———, and from and after her decease to pay the said Mary Robb, her daughter, if she survives her mother, an annuity of three hundred dollars ($300,)

payable semi-annually, for and during the term of the life of said Mary, and that the annuities so to be paid to the said Mary R. Miltenberger, Ellen W. Robb, and Mary.Robb, respectively, shall be in full satisfaction and discharge of all their claims aforesaid as creditors of the said estate.

"The appointment of trustees and appropriation of funds necessary and sufficient for the two trusts aforesaid shall be effected as soon as practicable by the said Charles A. Kebler, the administrator, and the parties concerned.

"5. All the pictures, library, letters and papers, plate and other chattels, useful or ornamental, belonging to the said estate shall be turned over to James Hampden Robb, reserving for Mrs. Charlotte M. Pancoast some one article to be agreed upon by them, which portions of the estate shall be received and taken by the said James Hampden Robb in full satisfaction and discharge of all his claim aforesaid as a creditor of the said estate.

"6. The residue, if any, of the moneys now in the administrator's hands and which shall arise from the sale of the real estate aforesaid, after providing for said trusts, and also any residue which may be left of the trust funds so set apart, after fulfilling the said trusts respectively, shall be divided and paid in four equal shares to and among the children and heirs of the said James Robb, deceased, viz., James Hampden Robb, Mrs. Isabella San Raman, Mrs. Mary R. Miltenberger, and Mrs. Charlotte M. Pancoast.

"It is understood that the foregoing agreement shall take effect immediately upon the order of the court for the sale of said real estate, and the setting aside the deed from James Robb to Isabella San Raman herein referred to and not before.

"In witness whereof the said Charles A. Kebler, administrator of the said estate, Mary R. Miltenberger, Charlotte M. Pancoast, James Hampden Robb, Ellen M. Robb, and Mary Robb have hereunto set our hands and seals in five parts interchangeably this — day of June, in the year 1883."

In carrying out the settlement provided for in the said agreement, ten thousand dollars in the hands of the adminis-

trator were invested in the purchase of certain pieces of real estate in the city of Cincinnati from one Moritz Loth, who conveyed the same to James Hampden Robb and Charles E. Strong, trustees, by a deed dated February 5, 1885. This deed expressed a consideration of ten thousand dollars as paid by the said Robb and Strong, as trustees, but did not define a trust or name any *cestui que trust*. By an instrument bearing date the same day, Robb and Strong, trustees, leased the same property to Moritz Loth during the joint life of Ellen W. Robb and Mary Robb, and during the life of the survivor, Loth, as lessee, agreeing to pay to the trustees a rent of $500, payable semi-annually, and to purchase the same property, on the death of Mary and Ellen W. Robb, for the sum of $10,000.

Robb and Strong, the trustees, were residents of the city of New York, and Ellen W. Robb, Mary Robb, and Moritz Loth resided in Hamilton County, Ohio, and the deed and lease were duly recorded in that county.

On March 30, 1885, Moritz Loth mortgaged his interest in said property and in other real estate to one William Stix, to secure a loan of ten thousand dollars.

In November, 1885, one Meyer Gugenheim, a judgment creditor of Moritz Loth, brought an action in the Court of Common Pleas of Hamilton County, Ohio, to subject all the real estate of Loth to the satisfaction of his judgment, making parties defendant a number of creditors of Loth, who held title to or liens upon the property claimed to be his, including Robb and Strong, trustees, and William Stix. A summons in that action was issued for Robb and Strong, trustees, and also for William Stix, as well as for the other defendants. On the 19th day of November, 1885, Kebler accepted service of that summons for Robb and Strong, trustees, and for William Stix, as follows:

" We accept service of summons in the within cause for Charles E. Strong and James Hampden Robb, trustees, and for William Stix, this 19th November, 1885.

"KEBLER & ROELKER,

" *Attorneys for above-named defendants, duly authorized.*"

The petition described various parcels of real estate claimed to be the property of Loth, and asked that the several defendants be required to show what interest they respectively had therein, and that the liens be marshalled and priorities determined, and a sale be made. As to the parcels owned by Robb and Strong, as trustees, the petition averred that they held the property only as security, and asked that the court so find. As bearing on this averment, interrogatories were attached to the petition, requiring Robb and Strong, trustees, to state what sum of money was paid to Loth as the consideration of the conveyance to them; what indebtedness existed at the time of the conveyance in reference to said property; whether any contract existed between them and Loth in reference to the property, etc.

The sheriff returned the summons: "Service accepted by Kebler & Roelker, attorneys for Charles E. Strong and James Hampden Robb, trustees, and for William Stix, as per acceptance above written."

On December 18, 1885, Kebler filed the answer and cross-petition of Robb and Strong, trustees, correctly setting forth their title to the premises, and prayed that their interest be protected therein. He answered under oath the interrogatories as attorney for Robb and Strong, trustees, assigning as a reason therefor that they were non-residents of the State and absent therefrom.

Kebler also filed in the same case the answer and cross-petition of said William Stix, and at a later stage of the case he filed an amended answer and cross-petition of William Stix setting up the maturity of several of the mortgage notes, breach of condition of the mortgage, and prayed a sale of the leasehold in the premises now in controversy, and of other property mentioned in that cross-petition. To these pleadings of Stix, Kebler filed answers for Robb and Strong, trustees, which he himself swore to.

On February 15, 1887, he consented to an elaborate decree on the cross-petition of William Stix, selling all the property described in the petition, and appointing George Sidney Tyler master commissioner to make the sale. That part of the

decree which referred to Robb and Strong, trustees, was as follows:

"And it is ordered with the consent of Henry W. Taylor, and Charles E. Strong, and James Hampden Robb, trustees, that the fee-simple title of the premises described in said mortgage to William Stix be sold and said premises be sold freed from the claims of Henry W. Taylor, and Charles E. Strong, and James Hampden Robb, trustees, and all other parties in this suit, their respective rights in and to said premises being transferred to and reserved in the proceeds of such sale."

By proceedings under this decree, on April 16, 1887, the property in question was sold, a part thereof to August Vos and a part to William Stix, and on May 24, 1887, conveyed, by a master, to them in fee simple, Vos paying into court the amount of his bid, $9100, and Stix paying $3131.32.

In the final decree of distribution it was ordered that the sum of $11,361.66, being principal and interest, should be paid over by the master to Robb and Strong, trustees, or Kebler, Roelker & Jelke, attorneys, and $7926.02 to William Stix or Kebler, Roelker & Jelke, attorneys, and those sums were paid to Charles A. Kebler, attorney.

On June 23, 1887, Charles A. Kebler gave to F. G. Roelker a conveyance of lands as security for moneys due by Kebler to Roelker, and also to indemnify the latter against any loss he might sustain or liability that he might be under by reason of the partnership business of Kebler & Roelker, attorneys.

On November 25, 1887, Charles A. Kebler died by his own hand, intestate and insolvent.

In January, 1888, in the Court of Common Pleas of Hamilton County, Ohio, at No. 79,812, William J. Coppock, as administrator of Charles A. Kebler, deceased, filed a petition setting forth, among other things, the death of Kebler intestate and insolvent; that there was a large amount of real estate which it was necessary to sell in order to provide means to pay debts; that certain persons had, or claimed to have, title to or liens against said real estate, etc. The minor children of Kebler and F. G. Roelker were made parties defendant. To this petition Roelker filed an answer, in which he alleged

the existence of the conveyance or mortgage made to him in June, 1887, by Kebler, and that J. Hampden Robb and Charles E. Robb, as trustees, claimed to have had dealings with Charles A. Kebler, acting and professing to act as a partner of him, the said Roelker, whereby they claimed that the said partnership and the said Roelker were indebted to them; that he, the said Roelker, did not know, and was unable to state, the particulars of said transactions; that they were concealed from him by the said Charles A. Kebler during his lifetime, etc.; and that he, Roelker, if liable by reason of said transactions, was entitled to the protection of the said conveyance of June, 1887; and he further alleged that the said Robb and Strong, trustees, were necessary parties to the determination of the rights of the parties to the litigation, and asked that they be made defendants and be called upon to answer and to set up their claims, etc.

In this suit Robb and Strong, trustees, appeared and filed an answer and a cross-petition, in which they set forth the particulars of their title to or interest in the lands described in their conveyance to Moritz Loth and the lease of the latter to them, and the proceedings in the Gugenheim case. In respect to that case their averments were as follows:

"And these defendants further say that on said day one Meyer Gugenheim, having recovered by the consideration of this court a judgment against the said Moritz Loth, brought suit in this court, case No. — in this court, against the said Moritz Loth, and the defendants and divers other persons, praying, among other things, that these defendants may be declared to hold said lands by way of mortgage as security for the said purchase price on said lands of $10,000, and that said lands might be free from the claim of these defendants and all other persons parties thereto to satisfy the said judgment of the said Meyer Gugenheim and the claims of divers persons therein made defendants.

"And these defendants further say that thereafter, to wit, on the 18th day of December, 1885, Charles A. Kebler and Frederick G. Roelker, then partners engaged in the practice of law under the firm name and style of Kebler & Roelker, of

the city of Cincinnati, entered the appearance of these defendants in such cause and filed an answer therein on behalf of these defendants; further say therefore, to wit, upon the 10th day of May, 1887, said firm of Kebler & Roelker was dissolved, and Charles A. Kebler, Frederick G. Roelker, and Ferdinand Jelke, Jr., entered into a partnership and engaged in the practice of law in the city of Cincinnati under the firm name and style of Kebler, Roelker & Jelke, as the successors of said firm of Kebler & Roelker, and these defendants say that thereafter all steps in said cause on behalf of these defendants were taken by said firm of Kebler, Roelker & Jelke, and by none others; and these defendants further say that such proceedings were afterwards had in said cause that the said premises were sold, free of the claims of these defendants and of all other persons whatsoever, by one George Sidney Tyler, who was appointed special master commissioner by this court in said cause for the purpose of making such sale, and such proceedings were thereafter had in said cause that a decree was made in said cause on the 19th day of May, 1887, whereby it was ordered, adjudged, and decreed that said George Sidney Tyler, special master commissioner in said cause, pay to these defendants or their counsel, Kebler, Roelker & Jelke, out of the proceeds of said sale, the sum of $11,361; and these defendants further say that said sum was duly paid on the 16th day of June, 1887, to said firm of Kebler, Roelker & Jelke by said George Sidney Tyler, special master commissioner, as ordered by the decree of said court, and that no portion thereof has been paid to these defendants or accounted for to them; and these defendants further say that since which time, to wit, on the 23d day of November, 1887, Charles A. Kebler departed this life, and that Frederick G. Roelker and Ferdinand Jelke, Jr., are the surviving partners of said firm. Wherefore these defendants pray that said Ferdinand Jelke, Jr., may be made party defendant hereto and that it may be adjudged that these defendants are creditors of said firm of Kebler, Roelker & Jelke, and that the property in the petition and cross-petition of Frederick G. Roelker sought to be sold may be sold, and that out of the proceeds thereof said sum $11,361.66,

with interest from the 16th day of June, 1887, may be paid to these defendants, and that these defendants may recover judgment against Frederick G. Roelker and Ferdinand Jelke, Jr., as surviving partners of Kebler, Roelker & Jelke, for said sum of $11,361.66, with interest from the 16th day of June, 1887, and for their costs. "

Subsequently, on May 17, 1888, Robb and Strong, trustees, obtained leave of court to withdraw their said answer and cross-petition, and filed a demurrer on the ground that they were not proper parties to the case, which demurrer was sustained by the court, and Robb and Strong were, on May 26, 1888, dismissed with their costs.

On May 12, 1888, Robb and Strong, trustees, at No. 43,368 of the Superior Court of Cincinnati, Hamilton County, Ohio, brought a suit against August Vos and William Stix. In the petition, after reciting the conveyance by themselves to Moritz Loth and the lease of the latter to them, they set forth the proceedings in the Gugenheim case, and alleged as follows :

" And the plaintiffs further say that on said day one Meyer Gugenheim, having recovered by the consideration of the Court of Common Pleas of Hamilton County, Ohio, a judgment against the said Moritz Loth, brought suit in the said Court of Common Pleas, numbered 74,375 in the said court, against the said Moritz Loth and these plaintiffs and divers other persons, praying, among other things, that these plaintiffs might be declared to hold said lands by way of mortgage as security for the said purchase price of said lands of $10,000, and that the said lands might be sold free from any claims of these plaintiffs and all other persons parties thereto, to satisfy the judgment of the said Meyer Gugenheim and the claims of the divers other persons therein made defendants.

" And these plaintiffs further say that in said cause no summons or other process was ever issued for these plaintiffs (who then were and ever since have been non-residents of Ohio) and no advertisement was ever made for these plaintiffs, and that they had no notice of said proceedings ; and these plaintiffs further say that thereafter, to wit, on the 18th day of December, 1885, one Charles A. Kebler, then engaged in the prac-

tice of the law with one Frederick G. Roelker, under the firm
name and style of Kebler & Roelker in the said city of Cin-
cinnati, did, without authority from the plaintiffs and without
their knowledge, enter the appearance of these plaintiffs in
said case, and did file an answer therein on behalf of these
plaintiffs, using for that purpose said firm name of Kebler &
Roelker.

" And these plaintiffs further say that thereafter, to wit,
prior to the 11th day of May, 1887, the said firm of Kebler
& Roelker was dissolved, and the said Charles A. Kebler, the
said Frederick G. Roelker, and one Ferdinand Jelke, Jr., en-
tered into a partnership and engaged in the practice of the
law in said city of Cincinnati, under the firm name and style
of Kebler, Roelker & Jelke, as successors to the said firm of
Kebler & Roelker; and these plaintiffs further say that there-
after all steps in said cause purporting to be on behalf of these
plaintiffs were taken in the name of the said firm of Kebler,
Roelker & Jelke.

" And these plaintiffs further say that all steps taken in said
cause at any time purporting to be on behalf of these plaintiffs
were taken without the knowledge of these plaintiffs and with-
out any authority from these plaintiffs; and these plaintiffs
say that all orders, decrees, and judgments entered in said
cause purport to have been entered by and with the consent
of these plaintiffs, but that the same were entered by the said
Kebler, Roelker & Jelke, and without the knowledge, consent,
or the authority of these plaintiffs, and that these plaintiffs
had no knowledge of said cause or the institution thereof, or
of any proceeding therein, until December 2, 1887, being long
after the conveyance of said lands to the purchasers thereof,
in pursuance of the pretended sale made in said case.

" And these plaintiffs further say that such proceedings
were had in said cause No. 74,375, that the said premises
were sold by one George Sydney Tyler, who was appointed
special master commissioner by said Court of Common Pleas
for the purpose of making said sale of property, and that said
special master commissioner purported to make said sale free
of the claims of these plaintiffs and of all other persons what-

ever parties to said cause, and that the said parcels of land were purchased, respectively, at said sale by the said August Vos, purchasing lots numbered 3, 4, and 5, hereinbefore described, of the subdivision of the tract of land on the west side of Vine Street, 100 feet front and extending back westwardly 132 feet, of the same width in front as in rear, and the said William Stix purchasing the other lots hereinbefore described, to wit, all those parts of lots 2, 4, and 5, of block 12 of Findlay and Ludlow subdivision, hereinbefore described.

"And these plaintiffs further say that in said cause numbered 74,375 a decree was made on the 19th day of May, 1887, whereby it was ordered, adjudged, and decreed that the said George Sydney Tyler, special master commissioner in said case, pay to these plaintiffs, or to Kebler, Roelker & Jelke, purporting to be their attorneys in said cause, out of the proceeds of said sale, the sum of $11,361.66.

"And these plaintiffs further say, that thereafter, on the 16th day of June, 1887, the said George Sydney Tyler, special master commissioner, as ordered by the decree of said court, but without the knowledge and consent of these plaintiffs and without their authority, did pay to the said Kebler, Roelker & Jelke, and the said Kebler, Roelker & Jelke received, the said sum of $11,361.66, and that no portion of the said sum has been received by these plaintiffs or been accounted for to them.

"And these plaintiffs say that they were never parties to said cause in law or in fact, and that the said sale as to them is null and void.

"And these plaintiffs further say that the said transactions between them and said Moritz Loth were in truth and in fact a loan by them to the said Moritz Loth of the sum of $10,000, in consideration whereof the said Moritz Loth conveyed to them the premises hereinbefore described, and they executed to the said Moritz Loth the lease hereinbefore described, containing the privilege of purchase for the said sum of $10,000; and they say that in consequence thereof they have a first and best lien upon the said premises in the said sum of $10,000, with interest thereon, and that there is and remains due and unpaid

thereon the sum of $10,000, with interest thereon from January 1, 1885, at six per cent per annum.

" Wherefore the plaintiffs pray that the said claim may be established as a first and best lien on the said premises, and that unless the defendants shall pay to them the said sum of $10,000, with interest as aforesaid, at a short day to be fixed by the court, that the said premises may be sold for the satisfaction of their said claim, and for such other and further relief as they may show themselves to be entitled to in equity and good conscience."

In the Superior Court case, summons was issued May 12, 1888, and served on August Vos, May 18, 1888.

On June 7, 1888, Vos filed his answer and cross-petition in said case, denying that the alleged acts of Kebler for the said Robb and Strong, trustees, in the Gugenheim case were without their authority, knowledge, or consent, admitting the sale to him under the proceedings in that case, and that the transactions between them and said Loth were in fact a loan by them to him of $10,000 at six per cent interest secured in the form of said deed and lease, but denying that they have any lien on said premises therefor or that any part thereof remains unpaid. By way of cross-petition, the said Vos set up the proceedings in the said Gugenheim case, and averred their regularity, and that said proceedings, orders, decrees, sale, and deed vested in him a valid title in fee simple to the said real estate purchased by him thereunder, free from all claims of said appellants and other parties to said cause, his payment therefor of $9100, and his possession thereof ever since the conveyance to him, May 24, 1887. He prayed " that the said claim and interest of the said Robb and Strong, trustees, in and to said real estate may be adjudged to be null and void, and that his title aforesaid may be quieted against the same, and for all other proper relief."

On June 8, 1888, upon motion of said Robb and Strong, trustees, their said petition was dismissed, and as to the said cross-petition of Vos, the cause was continued for further proceedings. On July 7, 1888, the said Robb and Strong, trustees, filed their petition in said cause 43,368, Superior Court

of Cincinnati, for a removal of the same on the cross-petition of said Vos to the Circuit Court of the United States, in and for the Southern District of Ohio, Western Division, and the order of removal was made.

In said petition they say that they are citizens and residents of the State of New York; that August Vos is a citizen and resident of the State of Kentucky, and William Stix is a citizen and resident of the State of Missouri. They further say that the said suit " is one of a civil nature, where the matter in dispute exceeds, exclusive of interest and costs, the value of $2000, and is one in which there is a controversy on cross-petition between citizens of different States." They then state the facts, in substance, averred in their said petition filed May 12, and in said cross-petition of August Vos, the dismissal of their said petition, June 8, and their remaining in the case only as defendants to said cross-petition of Vos.

On October 2, 1888, the transcript of the record in said case was filed in the said Circuit Court, and numbered therein 4182.

On October 4, 1888, the said Vos filed his motion in said Circuit Court for the remanding of said cause No. 4182 to the Superior Court of Cincinnati, for want of jurisdiction in said Circuit Court.

On November 17, 1888, the Circuit Court overruled said motion. To which overruling the said Vos then entered his exception.

On November 26, 1889, on motion of the said complainants, said cause No. 4182 was consolidated by order of court with cause No. 4148, all further proceedings to be had under the latter number.

In No. 4148, complainants' bill stated the citizenship and residence of the parties as in their petition in the Superior Court case. They were all non-citizens and non-residents of Ohio. It alleged that said Robb and Strong, trustees, owned certain valuable real estate in the city of Cincinnati, Ohio, which was in the possession of tenants under a lease for the life of two persons for whom said trustees acted. A judgment creditor of the lessee sought by judicial proceedings in the

Court of Common Pleas of Hamilton County, Ohio, to subject his interest in these and other lands to payment of his claim. The petition was in the nature of a creditor's bill, and made parties defendant a number of persons, including said trustees, holding deeds from the lessee, and charged that these deeds were intended as mortgages, and prayed that they be so decreed, and the property sold to satisfy said judgment.

The trustees were non-residents, and Kebler, of the law firm of Kebler & Roelker, and purporting to act for that firm, entered their appearance in the case and consented to a sale of the fee, it was alleged, without their authority or knowledge. The property was sold at judicial sale, and the proceeds received by Kebler and not paid over or accounted for by him to said trustees. The defendants, Vos and Stix, were purchasers. The bill sought to avoid the title so acquired by them, on the ground that the sale was absolutely void by reason of the fraud of Kebler.

On August 2, 1888, the defendant, Vos, filed a demurrer to said bill.

On August 28, 1888, the court held the bill "good on its face substantially," and overruled the demurrer, and allowed Vos until the first Monday of October, 1888, to plead or answer to the bill.

On September 14, 1888, Vos filed a plea to said bill, setting forth the judicial proceedings referred to in said bill, and contained in Exhibits "A," "B," "C," and "D," made part thereof, under which he purchased and acquired title, that he was "a *bona fide* purchaser of said premises for a good and valuable consideration, and without notice or knowledge that the acts and proceedings of said Charles A. Kebler and of the firm of Kebler & Roelker on behalf of said complainants, alleged in said bill, were unauthorized by said complainants and without their knowledge, or that said complainants did not consent to said sale, or of the alleged fraud on the part of said Kebler;" and that he had no such notice until after May 12, 1888, when said complainants filed their said petition in the Superior Court of Cincinnati.

On September 27, 1888, the court overruled said plea, to

which said Vos entered his exception, and was allowed thirty days to answer, which time was, on November 26, 1888, extended to December 10, 1888.

On December 8, 1888, said Vos filed his answer to said bill.

In this answer Vos admitted specifically all the allegations of said bill, except the following, which he denied, to wit: He denied that the said Kebler and Kebler & Roelker had no authority to accept service of summons for said complainants in said Gugenheim case. He denied that said complainants had notice or knowledge of their answer and cross-petition in said case filed by said Kebler, or of their answer to the cross-petition of William Stix filed therein by said Kebler, or that said Kebler was not authorized to file the same. He denied that said Robb and Strong, trustees, did not consent that said premises should be sold free from their claim and title, thereto, or that said claim and title should be transferred to or reserved in the proceeds of sale to be made under said decree, or that said Kebler and Kebler & Roelker had no authority to make or give such consent for them. He denied that said complainants had no knowledge of the order of distribution of the proceeds of said sale made in said cause, or of the payment of said sum of $11,361.66 to said Kebler, or that said Kebler was not authorized to receive said sum, or that the order of court directing such payment was null and void. He denied that said Kebler was wholly insolvent at all times mentioned in said bill. He denied that prior to or at the time of his purchase of said premises he knew complainants were absent from the State of Ohio, or non-residents of said State during the time of said proceedings. He denied that the proceedings and acts taken and done in said cause, purporting to be on behalf of said complainants, were without authority, notice, or knowledge, or that they were done solely by fraud of said Kebler, or that they were ignorant of said suit and the proceedings therein and of the receipt of said money by said Kebler until after his death. He denied that the said decree in said cause was null and void as to said complainants, or that the said

Court of Common Pleas was without jurisdiction to order the said premises sold free from their claim and title, or that said sale and conveyance to him by said Tyler were null and void. He denied that no rent had been paid under said lease since February 5, 1886, or that there was due and unpaid rent since that date at the rate of $600 per annum, or that said complainants had any lien on said premises therefor.

Of the truth of the charge in said bill, that the said Kebler embezzled and appropriated said sum of $11,361.66 to his own use, and that said complainants received no part of the same, or of the charge therein that said Loth was insolvent, the defendant averred that he had no knowledge, and did not admit the same.

Admitting that he had failed and refused to perform any of the covenants and conditions of said lease as charged in said bill, he averred that he was under no obligation to perform the same, but that, by virtue of said sale and conveyance to him of the premises so purchased by him and the consideration of $9100, which he paid therefor, he acquired a perfect title to said premises in fee simple, including all the right, title, and interest of both said lessors and said lessee, and free from the claims of all the parties to said suit.

Further answering, said Vos averred that at the time said deed was made by said Loth to said Robb and Strong, trustees, and said lease by them back to him, the transaction was understood and intended to be in fact a mortgage to secure an investment then made of $10,000 by said trustees for the purpose of furnishing an income to the said Ellen W. and Mary Robb; that at the same time it was understood and agreed between said trustees and said Kebler, and said Kebler & Roelker, that the said Kebler should have entire charge of said investment and collection of said rent or interest and pay same directly to said Ellen W. and Mary Robb, with full authority to act for said trustees in carrying out said trust in all matters required for the protection and collection of said interest and principal, and in pursuance thereof, that he did, with the knowledge and consent of said trustees, collect interest on said $10,000, paid as rent from February 5, 1885, down to

November 1, 1887, and paid the same over to said Ellen W. and Mary Robb, and that he had also paid over to the said Ellen W. Robb and Mary Robb a portion of said sum of $11,361.66, but how much thereof exactly he could not state.

And, further answering, said Vos averred that any alleged want of authority on the part of said Kebler, or Kebler & Roelker, to do any and all of the acts by him or said firm done and in said bill mentioned, was supplied, and all such acts purporting to be done on behalf of said complainants, were ratified by them as follows : Said complainants, on March 2, 1888, in the Court of Common Pleas of Hamilton County, Ohio, in the case of William J. Coppock, Administrator, *v.* John Kebler et al., No. 79,812, on the docket of said court, voluntarily entered their appearance and filed their answer and cross-petition ; and again, on April- 10, 1888, in the same court, in the case of William J. Coppock, Administrator, *v.* John Kebler et al., No. 79,902, on the docket of said court, said complainants having, on cross-petition of Frederick G. Roelker, been made parties defendant in said cases, voluntarily entered their appearance and filed their answer and cross-petition in each of said cases, being in the same language, and in each case averring that said Charles A. Kebler, for his firm of Kebler & Roelker, had entered the appearance of said Robb and Strong, trustees, in said action in the bill mentioned, brought by said Gugenheim, and had filed an answer therein on their behalf, and that on May 11, 1887, said firm of Kebler & Roelker had been dissolved, and had been succeeded by the firm of Kebler, Roelker & Jelke, composed of said Kebler and Roelker and Ferdinand Jelke, Jr., and that thereafter all steps taken in said cause on behalf of said Robb and Strong, trustees, were taken by said new firm ; and that in the case aforesaid, brought by said Gugenheim, the premises in the said bill herein described had, pursuant to decree made therein, been sold by George Sidney Tyler, special master commissioner appointed by the court for that purpose, free from the claims of said Robb and Strong, trustees, and all

other persons whomsoever; averring further, that the decree had been made in said cause on May 19, 1887, whereby it was ordered, adjudged, and decreed that said special master commissioner should pay to said Robb and Strong, trustees, or their counsel, Kebler, Roelker & Jelke, out of the proceeds of said sale, the sum of $11,361.65; and further averring, that said sum had been by said special master commissioner, on June 16, 1887, duly paid to said firm, but no portion thereof had by said firm been paid or accounted for to said Robb and Strong, trustees; and further averring, that, on November 23, 1887, said Charles A. Kebler had deceased, and that said Roelker & Jelke were the surviving partners of said firm of Kebler, Roelker & Jelke, and praying that said Jelke might be made party defendant to said causes; and that it might be adjudged that said Robb and Strong, trustees, were creditors of said firm of Kebler, Roelker & Jelke; and that the property in the petition and cross-petition of said Roelker sought to be sold might be sold, and that out of the proceeds thereof said sum of $11,361.65, with interest from June 16, 1887, might be paid to said Robb and Strong, trustees; and that said Robb and Strong, trustees, might recover judgment against said Roelker & Jelke, as surviving partners of said Kebler, Roelker & Jelke, for said sum and interest.

And, further answering, said Vos averred that said answers and cross-petitions were sworn to by the said James Hampden Robb, and were signed and filed by the duly authorized attorneys of the said Robb and Strong, trustees, that the same remained on file in said cases until May 16, 1888, when, said cases having in the meantime been consolidated April 21, 1888, (Record, p. 164,) said Robb and Strong, trustees, filed a demurrer to said cross-petition of Frederick G. Roelker, on the ground that they had been improperly joined as defendants thereto; and thereafter, until May 28, 1888, when said demurrer was sustained, and said Robb and Strong, trustees, were dismissed from said cases. A copy of said answers and cross-petitions was filed with the answer of said defendant, William Stix, to said bill, to which copy the said Vos makes

reference and incorporates said copy in this his answer as part thereof.

Said Vos further averred that at the time of swearing to said answers and cross-petitions and filing them, said Robb and Strong, trustees, had full knowledge of all things and acts done in their behalf by said Kebler, and Kebler & Roelker, and Kebler, Roelker & Jelke, and they deliberately adopted them as done on their behalf and ratified them, and supplied all lack of previous authority upon the part of said Kebler, and Kebler & Roelker, and Kebler, Roelker & Jelke, if any such there previously had been, which he, said Vos, denied. And thereupon said Vos prayed to be hence dismissed.

On the same day, December 8, 1888, the said August Vos filed in said Circuit Court and in said cause No. 4148 his cross-bill against the said James Hampden Robb and Charles E. Strong, trustees, William Stix and Moritz Loth, stating fully the facts alleged in said bill of Robb and Strong, trustees, which were admitted in his answer to said bill; also the facts set forth in his said answer; also averring that on May 24, 1887, he entered into possession of the premises so purchased and conveyed to him, and had had possession thereof ever since, and had expended a large amount of money thereon in repairs and permanent improvements, which he was ready to show to the court; also referring to the petition hereinbefore mentioned, filed in a cause brought by said Robb and Strong, trustees, May 12, 1888, in the Superior Court of Cincinnati, No. 43,368, removed to said Circuit Court and then on the docket thereof, No. 4182, in which they averred that the said transactions between them and said Loth — the deed and lease — were in truth and in fact a loan by them to said Loth of $10,000, for which sum and interest thereon they had a first and best lien upon said premises. Reference was made to the certified copy of said petition contained in the transcript of the record in said case 43,368, Superior Court of Cincinnati, on file in said Circuit Court in said case No. 4182, and the same incorporated therein.

Vos prayed that, in the event it be found by the court that the said acts done by said Kebler, or Kebler & Roelker, or

Kebler, Roelker & Jelke, were unauthorized by and not ratified by and not binding on said Robb and Strong, trustees, and the said judgments, orders, and decrees of said Court of Common Pleas void as to them, and that he acquired no title by his purchase and deed of the said real estate, it should be decreed that the deed and lease aforesaid constituted only a mortgage to secure to said Robb and Strong, trustees, the payment of said $10,000 and interest, and that an account be taken to ascertain what proportion of said sum and interest ought justly to be borne by him as chargeable against the land covered by said mortgage purchased by him, taking into account the payments which it might be found said Kebler, or Kebler & Roelker, or Kebler, Roelker & Jelke, had made on account of said interest and principal, or out of said sum of $11,361.65, to said Ellen W. Robb and Mary Robb, which proportionate sum that might be so found he thereby offered and agreed to pay as said Circuit Court should direct.

On December 21, 1888, said Robb and Strong, trustees, filed their general replication to the answer of said Vos in No. 4148.

On February 16, 1889, said Robb and Strong, trustees, filed their answer to the said cross-bill of August Vos, in which they denied that said Vos was an innocent purchaser for valuable consideration, without notice of the want of authority from the said Kebler, or Kebler & Roelker, or of the want of consent of said Robb and Strong, as trustees, to the decree of sale in the said Gugenheim case; and they denied that any of the acts of said Kebler, or Kebler & Roelker, or Kebler, Roelker & Jelke, had been ratified by any act of said Robb and Strong, as trustees. As to whether the said transaction, whereby the said Loth conveyed to them said property for $10,000, and they leased the same back to him, was a loan, and whether said conveyance should be regarded as a mortgage, and to be foreclosed as such, they left the same to the determination of the court upon the proof to be made by said August Vos of the allegations of his said cross-bill.

They also denied any authority on the part of said Kebler, or Kebler & Roelker, to collect said rent, or to act for them

in the collection of said interest or principal; and they denied that said Kebler collected any of the interest of said $10,000, and paid the same to Ellen W. Robb and Mary Robb, and if he did so, that he was authorized to collect the said principal.

On February 23, 1889, said Vos filed a general replication to said answer of Robb and Strong, trustees, to his cross-bill.

The defendant, William Stix, did not file any demurrer or special plea to said bill, but otherwise filed pleadings substantially the same as those filed by August Vos.

On the final hearing, November 26, 1889, upon the pleadings and evidence, the court found the equity of the case with the defendants, and that the complainants had ratified said Kebler's want of authority, and therefore decreed the dismissal of the bill; and also that the title of Vos should be quieted against the complainants, as prayed for in his cross-petition.

*Mr. Edward Colston,* (with whom were *Mr. Judson Harmon* and *Mr. George Hoadly, Jr.,* on the brief,) for appellants, on the question of election and ratification said:

It is claimed that Robb and Strong, trustees, by filing an answer and cross-petition in the Coppock case, ratified Kebler's want of authority, and thereby made the title of Vos and Stix to the land in question good.

Ratification being thus asserted and denied, the question is, whether the mere fact that Robb and Strong, trustees, filed an answer and cross-petition in the Coppock case furnishes, *under the circumstances,* conclusive evidence that they did thereby elect to abandon their title, as trustees, to this land, and to adopt in lieu thereof the chance of recovering some, or it may be all, or it may be none, of the money from Kebler's assets or from Kebler's partners *by means of the Coppock case.* The court below decided in the affirmative and accordingly dismissed the bill on that ground.

We claim that there is in this record no evidence of an intelligent and intentional ratification of the acts of Kebler and of deliberate choice *actually made* to look solely to what

might be got out of the Coppock case. It is not pretended that there was any express ratification,.and, therefore, if any ratification there was, it must be implied. This presents a question of fact, not· of law. Ratification and election rest upon intention. The answer and cross-petition of Robb and Strong, which is claimed to operate as a ratification, was not a *suit begun* by them, but only a pleading filed in an action in which they .had been summoned as defendants, *for a limited purpose*, by the cross-petition of Frederick G. Roelker. Roelker did not claim it was necessary to bring in Robb and Strong, trustees, in order to determine the question whether they had any claim upon " the subject-matter in this case." The precise language of Roelker's cross-petition is that Robb and Strong, trustees, " are necessary parties· to the determination of the right of *plaintiff* (Coppock) and of this *defendant* (Roelker) to the subject-matter of the litigation in this cause."

Roelker did not aver that Robb and Strong, trustees, had any claim to participate in his indemnity fund or that they had asserted a right to avail themselves thereof. He recognized no rights of Robb and Strong in· that fund nor to any relief in the case. Their presence was averred to be necessary only to determine rights between Coppock and him. Roelker acted on the idea that it was necessary to have Robb and Strong before the court to enable *him* to establish *his* lien upon the Kebler assets to an extent that would protect him against the Robb and Strong claim should they make it, and not in order to afford *them* an opportunity to assert any right of *theirs*. But in reality their presence was not necessary even for this purpose; and the court so decided, and they were dismissed. It is true that Robb and Strong, in their answer, overlooking the purpose for which they had been invoked into the case, did set up a claim to a personal judgment not only against Roelker, but against Jelke, the other partner, whom the answer of Robb and Strong prayed should be made a party. But Jelke was not made a party. It was, however, clearly not a case for a personal judgment against Roelker and Jelke, or either. Such cause of action would. have been foreign to the case as affecting some and not all

the parties to the cause, and would have been contrary to the provisions of § 5020 Revised Statutes of Ohio, which requires that each cause of action shall affect all the parties to a case. It was proper, then, for these reasons, if for no other, that Robb and Strong should withdraw their answer and cross-petition, it being subject at any time before trial to be stricken from the files for non-conformity to that section or to a demurrer for the same reason. The result is the same as if no such answer had ever been filed by them.

But if any effect is to be given to the filing of this answer and cross-petition, no greater effect can be rightly claimed for it than would attach to it as the presentation of a claim to participate in a fund, the value of which the claimant knows nothing of; for anything more would have exceeded the limits of that case. The presentation of such a claim would not amount to an election even where it is filed *voluntarily*. So are all the authorities, particularly *Morris* v. *Robinson,* 3 B. & C. 196; *Curtis* v. *Williamson,* L. R. 10 Q. B. 57; *Wells, Fargo & Co.* v. *Robinson,* 13 California, 133. But the appearance of Robb and Strong in the Coppock case was not voluntary. Robb and Strong, although non-residents, were subject to constructive service by publication, and being thus compellable to appear, their appearance without waiting to be served by publication would have no different effect than if they had been served in that manner.

Our claim that there was no election on the part of Robb and Strong to ratify the acts of Kebler in consenting to the sale of the property as professed attorney for Robb and Strong, trustees, is placed upon the following grounds:

I. Robb and Strong, trustees, had no authority or power to ratify a transaction, the effect of which would be to divest them of their title as trustees to this property. They could not have conveyed this property in the first instance so as to divest their *cestuis que trustent* of their title; and *a fortiori* could not do so by ratification after the property had been sold and the proceeds thereof squandered. Stix and Vos derived notice of this want of power in the part of Robb and Strong from the conveyances and from the pleadings in the case.

Robb and Strong had no power to have accepted in lieu of the land the *chance* of making the money out of the insolvent Kebler, or out of his solvent partners who denied responsibility for his acts.

A ratification can only be made when the party ratifying possesses the power to perform the act ratified. *Marsh* v. *Fulton County*, 10 Wall. 676, 684. See also *Shaw* v. *Spencer*, 100 Mass. 382, *S. C.* 97 Am. Dec. 107; *Smith* v. *Ayer*, 101 U. S. 320; *The Distilled Spirits*, 11 Wall. 356.

II. There could be no ratification as against the partners of Kebler without their consent; they did not consent to a ratification the result of which would have made them liable for stolen money. The claim in the answer and cross-petition of Robb and Strong was not against the estate of Kebler, but only against his partners; or at most against Kebler, in conjunction with them.

III. Ratification being a question of intention, the filing of the answer and cross-petition of Robb and Strong did not, under the circumstances, constitute an election to give up the land and accept in lieu thereof a *supposed* right of recovery, for which they had in that case no remedy *enforceable in that proceeding.*

To constitute an election by implication, the acts relied upon must be plain and unequivocal acts, done under a full knowledge of all the circumstances and rights of the parties. *Reaves* v. *Garrett*, 34 Alabama, 558, 562; *Anderson's Appeal*, 36. Penn. St. 476.

In considering the question of ratification or election as arising from the act of filing this answer and cross-petition, we cannot accord to it the same significance as attaches to proceedings at common law where the pleading indicated to a certainty, whether it was founded upon tort or contract, there being in Ohio no forms of action. We find no case in the books where it has been decided that the mere commencement of a suit which was afterwards withdrawn without issue of process, has been held to amount to a ratification. In all the cases where the pendency of a suit not prosecuted to judgment has been held to constitute a ratification, there has

been either an attachment, a trial by jury or a replevin, or some other step taken whereby the plaintiff had acquired some advantage. There are in the opinions in some cases, expressions such as that any decisive act would constitute a ratification or election, as the case may be; but, in those very cases, there had either been a trial of the case or an attachment, or the case was still pending when the second action was brought. *Morris* v. *Robinson*, 3 B. & C. 196; *Morgan* v. *Couchman*, 14 C. B. 100; *Curtis* v. *Williamson*, L. R. 10 Q. B. 57; *Priestly* v. *Fernie*, 3 H. & C. 977; *Calder* v. *Dobell*, L. R. 6 C. B. 486; *Peters* v. *Ballistier*, 3 Pick. 495; *Valpy* v. *Sanders*, 5 C. B. 886; *Butler* v. *Hildreth*, 5 Met. 49; *Anchor Milling Co.* v. *Walsh*, 20 Mo. App. 107; *Bunch* v. *Grave*, 111 Indiana, 351; *Nason* v. *Cockroft*, 3 Duer, 366; *Becker* v. *Walworth*, 45 Ohio St. 169; *Dean* v. *Yates*, 22 Ohio St. 388; *Frank* v. *Jenkins*, 22 Ohio St. 597; *Huffman* v. *Hughlett*, 11 Lea, 549; *Wells, Fargo & Co.* v. *Robinson*, 13 California, 133; *In re Collie*, 8 Ch. D. 807.

Mr. *Gustavus A. Wald* and Mr. *A. B. Huston*, (with whom was Mr. *W. Austin Goodman* on the brief,) for Vos, appellee.

Mr. *Gustavus A. Wald* and Mr. *Charles B. Wilby* filed a brief for Stix, appellee.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

As the proceedings in the Gugenheim case were regular upon their face, and extrinsic evidence was required to show their invalidity, we think a court of equity was the proper tribunal to afford effectual relief. *Slater* v. *Maxwell*, 6 Wall. 268; *Cocks* v. *Izard*, 7 Wall. 559; *Oelrichs* v. *Spain*, 15 Wall. 211, 228; Freeman on Judgments, §§ 499 and 500.

Nor do we think that the contention, that for the Circuit Court of the United States to grant such relief would be to interfere with the jurisdiction of the state court, is well founded. *Pennoyer* v. *Neff*, 95 U. S. 714; *Johnson* v. *Waters*, 111 U. S. 640; *Arrowsmith* v. *Gleason*, 129 U. S. 86.

Whether the presumption, in favor of innocent third parties, that Kebler had authority to enter an appearance for Robb and Strong, trustees, and to receive the proceeds of the sale, was sufficiently overcome by the evidence in this case, we need not consider, because we agree with the conclusion of the court below that the acts of Kebler, whether done with or without authority, were subsequently adopted and ratified by the complainants.

That the course of Robb and Strong, in voluntarily appearing in the case of Coppock *v.* Kebler, and filing an answer and cross-petition therein, whereby they sought to appropriate to themselves the benefit of the mortgage given by Kebler, in June, 1887, to F. G. Roelker, would have been an adoption and ratification of the acts of Kebler done in their behalf, and would have estopped them, as against innocent third parties whose proceedings were or may have been influenced by such course, is clear, upon reason and authority, if Robb and Strong were acting in their own behalf. This course was deliberately chosen, after the lapse of several months from the death of Kebler, and with a full knowledge of all the facts. It does not appear that they acted under any mistake, nor that, when they afterwards dismissed their cross-petition and resorted to the present suit, they had acquired any additional information. The subsequent withdrawal of their answer and cross-petition did not avail to put the parties in *statu quo.* Such withdrawal could not restore to the purchasers at the Gugenheim sale their lost opportunity to pursue Kebler's estate. Nor is it necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to Vos and Stix from an attempt, if seasonably made, to secure indemnity from Kebler's estate. The right to seek such indemnity was a valuable one, and it is enough that it appears that Robb and Strong, by acquiescing in Kebler's acts and resorting to legal proceedings against his administrator and partner, prevented Vos and Stix from promptly and perhaps successfully pursuing their remedies against the criminal's estate.

Similar reasoning was applied by this court in the case of *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, 114.

It was there held that a depositor, whose checks had been fraudulently raised by his clerk, lost his remedy against the bank by his delay and negligence in making known the facts to the bank and thus giving it an opportunity to seek restitution from the wrongdoer, and the following language was used :

" Still further, if the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of proceeding to compel restitution. It is not necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. Whether the depositor is to be held as having ratified what his clerk did, or to have adopted the checks paid by the bank and charged to him, cannot be made, in this action, to depend on a calculation whether the criminal had at the time the forgeries were committed, or subsequently, property sufficient to meet the demands of the bank. An inquiry as to the damages in money actually sustained by the bank by reason of the neglect of the depositor to give notice of the forgeries might be proper if this were an action by it to recover damages for a violation of his duty. But it is a suit by the depositor, to falsify a stated account, to the injury of the bank, whose defence is that the depositor has, by his conduct, ratified or adopted the payment of the altered checks, and thereby induced it to forbear taking steps for its protection against the person committing the forgeries. As the right to seek and compel restoration and payment from the person committing the forgeries was, in itself, a valuable one, it is sufficient if it appears that the bank, by reason of the negligence of the depositor, was prevented from promptly, and, it may be, effectively, exercising it."

We do not deem it necessary to review the numerous cases, involving questions of election of remedy and ratification, cited on behalf of the respective parties, but shall content ourselves with referring to two or three which satisfactorily illustrate the principles upon which we proceed.

*Thompson* v. *Howard*, 31 Michigan, 309, 312, was a case where a father who had brought an action of assumpsit for a minor son's wages, and, after the jury disagreed, had discontinued the suit, and brought an action for the unlawful enticing away and harboring the son. The Supreme Court said:

"A man may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again. . . . [The plaintiff's] proceeding necessarily implied that the defendant had the young man's services during the time *with plaintiff's assent*, and this was absolutely repugnant to the foundation of this suit, which is, that the young man was drawn away and into defendant's service *against the plaintiff's assent*."

In *Conrow* v. *Little*, 115 N. Y. 387, 393, 394, the court said:

"The contract between Branscom and the plaintiffs was, upon the discovery of Branscom's fraud, voidable at their election. As to him, the plaintiffs could affirm or rescind it. They could not do both, and there must be a time when their election should be considered final. We think that time was when they commenced an action for the sum due under the contract, and in the course of its prosecution applied for and obtained an attachment against the property of Branscom as their debtor. They then knew of the fraud practised by him, and disclosed that knowledge in the affidavit on which the attachment was granted, and became entitled to that remedy because it was made to appear that a cause of action existed in their favor by reason of 'a breach of contract to pay for goods and money loaned obtained by fraud.' The attachment was levied and the action pending when the present action, which repudiates the contract and has no support except on the theory of its disaffirmance, was commenced. The two remedies are inconsistent. By one, the whole estate of the debtor is pursued in a summary manner, and payment

of a debt sought to be enforced by execution ; by the other, specific articles are demanded as the property of the plaintiff. One is to recover damages in respect of the breach of the contract, the other can be maintained only by showing that there was no contract. After choosing between these modes of proceeding, the plaintiffs no longer had an option. By bringing the first action, after knowledge of the fraud practised by Branscom, the plaintiffs waived the right to disaffirm the contract, and the defendants may justly hold them to their election. The principle applied in *Foundry Company* v. *Hersee*, 103 N. Y. 26, and *Hays* v. *Midas*, 104 N. Y. 602, require this construction, for the present contains the element lacking in those cases, viz., knowledge of the fraud practised by the vendee ; and by reason of it the plaintiffs were put to their election.

"It is not at all material to the question that the plaintiffs discontinued the first suit before bringing the present to trial, for it is the fact that the plaintiffs elected this remedy, and acted affirmatively upon that election, that determines the present issue. Taking any steps to enforce the contract was a conclusive election not to rescind it on account of any thing known at the time. After that the option no longer existed, and is of no consequence whether or not the plaintiffs made their choice effective."

In *Butler* v. *Hildreth*, 5 Met. (Mass.) 49, it was held that "an assignee of an insolvent debtor," under the insolvent law of 1838, "may affirm a sale of goods made by such debtor for the purpose of delaying or defrauding his creditors, and receive the price of the goods from the vendee. And if such assignee, knowing all the facts of the case, brings an action against the vendee, on a note given by him for the price of the goods, and secures the demand by an attachment of his property, he thereby so far affirms the sale, and waives his right to disaffirm it, that he cannot, by discontinuing such action, and demanding the goods, entitle himself to maintain an action of trover against the vendee, on his refusal to return them."

At page 51 the court said : "It would, we think, be going too far to say that merely demand of the price would be deemed a waiver of his right to avoid the sale and claim the

goods; because, in many cases, if the price could be obtained, it would be equally beneficial to the creditors, and he would have no farther occasion to pursue the harsher remedy of impeaching the sale. But we think that, if the assignee commences an action against the purchaser for the price, and causes his property to be attached to secure it, this is a significant act, an unequivocal assertion that he does not impeach the sale, but by necessary implication affirms it. It is an act, too, deeply affecting the rights of the purchaser, whilst it is an assertion of his own; and if done with a knowledge of all the facts which ought to influence him in his election, it is conclusive."

In *Connihan* v. *Thompson*, 111 Mass. 270, 272, the court said: "The defence of waiver by election arises where the remedies are inconsistent; as where one action is founded on an affirmance and the other upon the disaffirmance of a voidable contract or sale of property. In such cases, any decisive act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties, once for all. The institution of a suit is such a decisive act; and if its maintenance necessarily involves an election, to affirm or disaffirm a voidable contract or sale, or to rescind one, it is generally held to be a conclusive waiver of inconsistent rights, and thus to defeat any action subsequently brought thereon."

The rule established by these cases is that any decisive act by a party, with knowledge of his rights and of the facts, determines his election in the case of inconsistent remedies, and that one of the most unequivocal methods of showing ratification of an agent's act is the bringing of an action based upon such an act.

We cannot accept the contention that Robb and Strong never had any legal standing in the Coppock case, and that the filing of their answer and cross-petition was merely a fortuitous circumstance, which did no injury to Vos and Stix. It is true that when the answer and cross-petition were, by leave of court, withdrawn, the record did not, of itself, disclose any good reason for making them parties, and their

demurrer was properly sustained. But if they had stood upon their case, as set up in their answer and cross-petition, it would seem that they would have been entitled to relief.

These views justify the decree of the court below, unless the fact that Robb and Strong were trustees calls for a different conclusion.

It is claimed that the interest held by Robb and Strong, in the lands embraced in the deed and lease between them and Loth, was in the nature of an estate in realty, and that, as trustees, they could not themselves, nor by authority given to Kebler, have consented to the sale of such lands in the Gugenheim case. If the nature of their tenure was indeed such that it could not be affected by the sale in the Gugenheim case without their consent, and if, as trustees, they were disabled from consenting, it would seem to follow that the sale in that case was inefficacious, and that the remedy at law would be the sufficient and only one.

But our examination of the deed and lease, read in the light of the testimony of the parties, satisfies us that, as between Robb and Strong and Loth, the transaction was that of a loan of money secured by the covenants of the lease.

Moritz Loth testified, in the present case, that he regarded the transaction as a loan; and Robb and Strong, in the petition filed by them against Vos and Stix, alleged that " the said transactions between them and the said Moritz Loth were in truth and in fact a loan by them to the said Moritz Loth of the sum of $10,000, in consideration whereof the said Moritz Loth conveyed to them the premises hereinbefore described, and they executed to the said Loth the lease hereinbefore described containing the privilege of purchase for the said sum of $10,000," and they accordingly prayed that " their claim shall be declared to be a first and best lien on the premises, and that unless the defendants should pay them the said $10,000, with interest, the said land might be sold for the satisfaction of their claim."

It also appears that, in the Gugenheim case, the petition averred that Robb and Strong, trustees, held the land only as security.

Accordingly it would seem plain that the rights of Robb and Strong, trustees, were correctly asserted by Kebler in the answer and cross-petition filed by him in the Gugenheim case, and that, assuming that he was authorized to appear, the decree in that case, directing the lands to be sold, and awarding to Robb and Strong, trustees, the said sum of $10,000 and interest out of the proceeds, was fully warranted. It follows that, by the payment into court of the amount of the principal and interest of the money found to be due to Robb and Strong, trustees, and by the conveyance to them by the master of the lands in question, in pursuance of the decree, the purchasers became vested with a fee-simple title to said lands.

The decree of the court below is accordingly

*Affirmed.*

Mr. Justice Jackson and Mr. Justice White, not having heard the argument, took no part in the decision.