## WILLIAMS v. BARNES et al.

## No. 6676.

Circuit Court of Appeals, Fifth Circuit.
March 15, 1933.

George P. Garrett, of Orlando, Fla., for appellant.

J. Thomas Gurney, of Orlando, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

R. L. Williams, as receiver of LaFayette Development Company, Inc., appeals from a dismissal after a trial of his bill in equity

against W. J. Barnes, his wife Mrs. Lillian R. Barnes, Thomas P. Kingsford, and others, the dismissal going upon the sole ground that the appellant had by prosecuting to judgment an action at law barred himself from the relief sought in his bill. Barnes and three others owned in equal shares the stock of LaFayette Development Company, he being its president. The company owned unimproved building lots in Florida subject to a mortgage, but each capable of separate release from it on payment of fixed sums. They agreed on sales prices for each lot, but that on stated conditions they each might take one or more lots on paying the release price, the company receiving nothing else therefor. Barnes took several lots without, as is claimed, fulfilling the conditions, deeding them as president to himself and paying only for their release from the mortgage. A stockholders' bill was filed, alleging mismanagement, large indebtedness of the company but not insolvency, and praying a winding up of the corporation. Williams was appointed receiver, but his instructions as to bringing suits do not appear. On November 19, 1930, he sued Barnes at law in the court of his appointment upon the common counts, his bill of particulars reading: "To money due by W. J. Barnes to R. L. Williams, as receiver for LaFayette Development Company, Inc., in connection with Lot 19, Block 3, Springlake Terrace Subdivision, pursuant to deed from LaFayette Development Company, Inc., to William J. Barnes dated Aug. 1st, 1926, $6,000.00," followed by similar items referring to other lots and deeds. On January 14, 1931, in the same court, he brought the present bill against Barnes and others to whom the same lots are alleged to have been deeded by him, contending that the deeds from LaFayette Development Company, Inc., to Barnes, executed by himself as president, were made without authority, though under the corporate seal, and were without consideration and fraudulent as to the corporation and its creditors, and that the transferees from Barnes knew it and had colluded with him to put the lots beyond the reach of the receiver, they having paid nothing for the transfers. The bill sought cancellation of the deeds and recovery of the lots, or in the alternative an account of their value with a lien upon the lots and a sale of them. The defendants on May 16, 1931, answered jointly that the conveyances to Barnes were in good faith and valid under the agreement of the stockholders, that Barnes had paid the release price on each, had built houses upon them, and had sold them in good faith and for value.

They also pleaded the pending common-law action for the price of the lots as an election by the receiver to treat as valid the deeds made in the company's name to Barnes. On June 25, 1931, the law suit was brought to trial, and, after eliminating lot 19 of block 3, a verdict and judgment was obtained by the receiver against Barnes for $38,196.32. No execution has issued, nor has payment been made. The respondents in the bill by supplementary pleading set up this judgment as a further election and estoppel of the receiver to question the deeds made to Barnes. On the trial of the bill what has been stated above was proved, but it was not shown by what authority the receiver had brought and prosecuted the law suit, nor whether Barnes was insolvent, nor whether Kingsford and Mrs. Barnes now severally holding record title to the lots paid anything for them.

Neither the court nor any litigant has questioned the authority of the receiver to bring to judgment the law suit with whatever consequences it may have. The stockholders all testified in the trial. Since everything has occurred in the court of the receiver's appointment, we must assume that it has been with the court's approval. If ignorance of the facts when the law suit was begun would have prevented its filing being a conclusive election, no such ignorance existed when it was brought to trial, for this bill was then pending with allegations of all the facts now relied on to impeach the deeds to Barnes. The evidence shows that for each lot mentioned in the law action Barnes held a deed of the date alleged which recited a valuable but not fully stated consideration, that the suit was for its agreed sales price, and the recovery was for that less the release price paid the mortgagee. It is plain that if the deeds were to be invalidated either for want of authority to execute them or for fraud on stockholders or corporate creditors in that an officer took corporate assets for less than their value, Barnes did not also owe the corporation their price. He could be thus indebted to the corporation only if his title were ratified and treated as good. When the receiver, with full knowledge of the facts, elected to obtain judgment for their price, he cut himself off from claiming a rescission and restoration of the lots. Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; Weeke v. Reeve, 65 Fla. 374, 61 So. 749; United States v. Oregon Lumber Co., 260 U. S. 292, 43 S. Ct. 100, 67 L. Ed. 261. The case of Thomas v. Sugarman, 218 U. S. 129, 30 S. Ct. 650, 54 L. Ed. 967, 29 L. R. A. (N. S.) 250, is not in point.

No invalidity was proven in the deed to Barnes for lot 19 in block 3. The defense of ratification and election prevents recovery of the other lots. But the alternative relief which sought an account for their value and a lien upon and sale of them is not inconsistent with the remedy asserted in the law suit. The judgment there has not been paid. Barnes stood in a relation of trust to his corporation. Equity has jurisdiction to set aside fraudulent conveyances of the lots by Barnes to others made to defeat his debt to the corporation. This is all alleged in the bill but does not seem to have been dealt with at all in the trial. Perhaps the reason is that these conveyances are known to be in fact not fraudulent, although those whereby Mrs. Barnes got title from her husband are legally suspect. Since no error appears, we affirm the decree of dismissal, but lest it have a broader effect than the actual trial warrants, we modify it so as to be without prejudice to the question whether any of the transfers from Barnes were in fraud of the receiver's money judgment.

Modified and affirmed.