The opinion of the court was delivered by
WATKINS, J.
This is a revocatory action for the annulment of a sale of goods and merchandise by the plaintiffs to the principal defendant, J. D. Glass, charging fraud, and for a decree annulling a sheriff’s sale of the goods against certain attaching creditors of Glass to the extent that same had been identified prior to sale, with due notice to the said creditors.
The defence is a general denial coupled with a plea of estoppel, to the effect that the plaintiffs had first attached the goods now claimed,as the property of Glass, claiming the price, and can not be, subsequently, heard to assert the nullity of the sale of the goods ab initio and demand their restitution.
The plea of estoppel was overruled and a verdict of the jury rendered in favor of the plaintiff for goods identified of the value of fifteen hundred and ninety dollars and sixty cents, and from a judgment thereon based the defendant has appealed and the plaintiff has filed an answer to the appeal, and demanded that the judgment be increased to the sum of seventeen hundred and fifty dollars as the price for which the goods were originally sold.
*1424 Considering the transaction with reference co the plea of estoppel the facts of the case appear to be that plaintiffs made a sale of goods to Glass, the principal defendant, in Memphis, Tenn., where their business domicile is situated, on the 16 of August, 1894; the sale being for the stipulated price of five thousand seven hundred and fifty dollars, to be paid on four months’ time, or at an earlier date in consideration of discount being made.
Before the time for payment had arrived the entire stock of merchandise of Glass in the city of Shreveport, La., where his business establishment was situated, was attached by several of his creditors residing in Shreveport, the amount of their claims aggregating some twenty thousand dollars, and that being more than the value of his property.
Immediately afterward plaintiffs filed an ordinary suit against Glass upon their open account, representing the purchase price of the goods they had previously sold him, and praying for an attachment, caused the whole of his property to be seized, including the remaining goods of the lot they had let him have, and which remnant eonstitu' ed part of his general stock of merchandise.
A few days later the plaintiffs voluntarily entered a non-suit, and caused their attachment to be released; and thereupon they instituted the present revocatory action against their former defendant and alleged debtor, Glass, and made the prior attaching creditors of Glass co-defendants, claiming to have identified and set apart from the general stock of merchandize which had been seized, about seventeen hundred dollars’ worth of the goods which Glass had •obtained from them.
The grounds on which the present suit is brought against Glass are that he obtained these goods in fraud, under wilfully false representations, and under false pretences.
That he made false representations to them with respect to his solvency and financial standing; and that amongst other things he made to them the statement that he had on hand a stock of goods worth twenty thousand dollars; that he discounted all his bills before they became due, and that he owed no debts he could not easily and conveniently pay.
That he bought no other goods upon terms of credit, and owned a sufficient amount of unencumbered real estate to satisfy all of his bills.
*1425 The plaintiffs allege, substantially, that theyaoeepted Glass’ statement as true, and made the sale and delivery to him of over five thousand dollars’ worth of goods on the faith of same; whereas, in truth and fact those statements were absolutely untrue, and resorted to by Glass for the deliberate purpose of deceiving and defrauding them, having neither ability nor intention to pay for same, at the time.
But conceding these statements were correct and susceptible of proof, the plaintiffs are confronted with their solemn judicial admissions, made under oath in a previous suit against Glass, in which they affirmed, under oath, that he was indebted to them for the price of the goods which they had sold him, and demanded a judgment therefor; and they caused a writ of attachment to issue and a seizure thereunder to be made of the very property, amongst others, they now claim they never sold. These judicial averments and proceedings are now urged by the two attaching creditors of Glass, whose seizures primed and ranked those of the plaintiffs in said attachment suit, and who are made defendants in this suit, for the purpose of wresting said goods from their seizure and control.
Certainly these defendants have an interest in urging the estoppel of those judicial proceedings, as a means of protecting themselves from personal liability for the value of the goods claimed in this, as well as against their demand for their restitution in kind.
Plaintiffs are in the attitude of having, in the former suit, judicially affirmed the legality and validity of the sale of their goods to Glass, for the purpose of obtaining a judgment against him for the price, and sustaining their attachment against the goods as his property, and of asserting in this suit that the pretended sale of goods to Glass was a sham and a fraud on his part, and an absolute nullity as to them.
In treating of the election of remedies it is said in the American and English Encyclopedia of Law, that “ an election is binding on the party making it, and he can not afterward pursue an inconsistent remedy, though full recovery was not had in the first action,” etc. Vol. 6, p. 250, No. 4.
And under that heading the author cites the following cases, viz.: Buckley vs. Morgan, 46 Conn. 394; Bailey vs. Herocy, 185 Mass. 172; Maller vs. Tuska, 87 N. Y. 166; Rodermund vs. Clark, 46 N. Y. 354; Dibble vs. Sheldon, 10 Blatchf. 178.
*1426 In Neild vs. Burton, 49 Michigan, 53, it was held that an election if binding, though the court had not jurisdiction of the cause of action.
In Butler vs. Hildreth, 5 Metcalf, 49, Chief Justice Shaw, speaking for the Massachusetts court, said:
“ Then the question is, whether the plaintiff has waived his right to so avoid the sale, reclaim the goods and maintain an action in trover on the refusal of the defendant to deliver them, by the fact that, before he commenced this action he commenced an action against the defendant, on the notes given for the goods, made the usual affidavit that the notes were due, and caused property to be attached to secure the payment of them. The action on the notes was commenced February 3, 1841, but was never entered; (and) the present action was commenced March 28, 1841. Upon this case the jury were instructed that if the plaintiff, at the time he sued on the notes, knew all the facts, as he did afterward when he commenced this action of trover, tending to show that the sale was fraudulent and void, it was to be considered in law as a ratification of the sale, .and that in such case this action could not be maintained.”
The opinion of the court on this statement of fact declares:
“The assignee has an election, not of remedies merely, but of rights, but an assertion of one is, necessarily, a renunciation of the other. This results from the plain and very obvious consideration that the assignee can not affirm the sale in part and disaffirm it in part; if it is to stand as a valid sale, the property of the goods remains vested in the purchaser, and he remains liable for the price. But if the sale is avoided and set aside, it stands as if never made; the property may be taken possession of by the representatives of the creditors as if no sale had been made, and the purchaser ceases to be liable for the price. When, therefore, the assignee has made that election, is he receives or demands the price, it is equivalent to an express declaration that he does not impeach the sale, and has no cla'm to the goods,” etc.
Then the court, addressing its opinion to the question immediately before it, said:
“ But we think that if the assignee commences an action against the purchaser for the price, and causes his property to be attached to secure it, this is a significant act, an unequivocal assertion that he does not impeach the sale, but by necessary implication affirms it. .It is an act, too, deeply affecting the rights of the purchaser, whilst *1427 it is an assertion of his own; and, if done with a knowledge of all the facts which ought to influence him in his election, it is conclusive. ’ ’
Quite a similar doctrine is announced in Cray vs. St. John, 35 Illinois, 222, in which the court in disposing of a similar question employ this language, viz.:
“ The appellant, as sheriff, so far represented the attaching creditors as to enable him to assert their rights in the suits they had commenced. * * *
“ The creditors had their election to disaffirm the sales made by them on the ground of fraud, and invest themselves with the rights, and entitle themselves to the remedies the law affords in such cases; or they might affirm the sales and have the rights and remedies of .other creditors.
“ The commencement of the attachment suits was, at least, a prima facie affirmance of the sales and is a waiver of the fraud, and all rights resulting from it.”
These decisions appear to be appropriate and authoritative, and we adopt their reasoning as conclusive in this case.
There is no averment in the plaintiffs’ petition, to the effect that they had just made the discovery of the fraud, on the proof of which they relied for recovery, immediately previous to the filing of this suit; nsr does it contain any disavowal of their full knowledge of the same, at the time they filed their attachment suit, which is grounded on a distinct charge of fraud. Hence it is plain that they are bound by the election of the remedy by attachment, and it must be regarded as a prima facie affirmance of the sale of the goods to Glass which estops and precludes their disaffirmance of same in the present suit.
Our conclusion is, that the plea of estoppel, urged by the attaching creditors whose seizures primed that of the plaintiffs, and who are made parties bo this suit, should have been sustained and the plaintiffs’ suit dismissed.
It is therefore ordered and decreed that the judgment appealed from be avoided and reversed; and it is further ordered and decreed that plaintiffs’ demands be rejected at their cost in both courts.