No. 29,488

First Circuit

## R. E. GEORGE MACHINERY CO. v. N. O., TEXAS, MEXICO R. R. ET ALS.

(May 8, 1928. Opinion and Decree.)
(June 30, 1928. Rehearing Refused.)
(October 2, 1928. Writ of Review granted by Supreme Court.)
(November 26, 1928. Reversed by Supreme Court. Docket No. 29,488.)

Modisette & Adams, of Jennings, attorneys for plaintiff, appellee.

Peterman, Dear & Peterman, of Alexandria, and Spencer, Gidiere, Phelps & Dunbar, of New Orleans, attorneys for defendant, appellant.

MOUTON, J. LeBlanc, and Bereaud, farmers, ordered a threshing machine from plaintiff company, which was shipped from its branch office at Crowley. It was shipped from Crowley in July, 1920, and was by the New Orleans, Texas and Mexico R. R. Co., initial carrier, turned over for transportation to the Texas and Pacific Railway Company, which it is alleged, delivered the machine in violation of its contract of affreightment. Judgment was asked against the two railroad companies in solido, but the issue has narrowed down to a demand against the Texas and Pacific Company which appeals from an adverse judgment.

The bill of lading shows that the machine was shipped from Crowley, July 27, 1920, by plaintiff company; "destination, Lafourche. Crossing, La. Notify Chas. J. LeBlanc, Donaldsonville;" and that it was consigned to the order of the shipper. Through an error of the Texas and Pacific Company the thresher was sent to Donaldsonville. LeBlanc, who had ordered the machine from Crowley had it re-billed or re-shipped from Donaldsonville to Thibodaux, its original point of destination as appears from the bill of lading. In the meantime another similar machine had been shipped to LeBlanc and Bereaud as a substitute for the first machine, but the second thresher was returned to Crowley, and was receipted for by the Texas and Pacific R. R. Co. It seems that another bill of lading accompanied the second shipment. B. L. Fillingham was the representative of plaintiff, the George Machinery Co., at Crowley, and had attended to the shipment of both machines. He did not testify, and it is not shown where he was at the time of the trial which took place several years after these shipments were made.

Plaintiff introduced a letter in evidence purporting to have been written by Fillingham, dated at Crowley, August 3, 1920, and addressed to the Commercial and Savings Bank at Donaldsonville. This letter says:

"Please find settlement papers for separator sold to Chas. LeBlanc and Mr. Bereaud of Lafourche Crossing, please collect the draft and have the notes made and the mortgages properly signed up and forward the money and papers to this office when completed. And then turn over the bill of lading to them."

Fillingham's signature to this letter seems to be genuine as was testified to by witnesses in the case. At the time this letter was written, Sam M. Richard was the cashier of the Commercial and Savings Bank at Donaldsonville. He says he has no recollection of having received that letter. There is, however, the copy of a telegram sent from Crowley by plaintiff company, dated August 10, 1920, seven days later than the date of the letter. This telegram is addressed to the Commercial Bank at Donaldsonville and is in the words following:

"Transfer settlement papers on Bereaud and LeBlanc to Lafourche Bank at Thibodaux for their convenience."

No doubt this telegram was sent by Fillingham as LeBlanc testifies that he rang up Fillingham and asked him to transfer the notes to the Thibodaux Bank. Sam Richard, cashier, says the bank received this telegram and at the time had in its possession the settlement papers referred to in the telegram. He could not, however, remember if the bank had the bill of lad-

ing. As the telegram was no doubt sent by Fillingham, and as his signature on the letter above referred to cannot but be considered genuine according to the evidence, we are convinced that the bank also received the bill of lading to which the letter refers. As the thresher had been reshipped to Lafourche Crossing, its point of destination, it is not possible to believe that the bill of lading was not sent with the papers for settlement to the Bank at Thibodaux.

P. F. Legendre, then cashier of the Bank of Lafourche, to which the papers had been transmitted by the Donaldsonville Bank, could not at the time of the trial remember if he had received the bill of lading in question. When asked, however, if he was able to state whether or not he had presented to Bereaud or LeBlanc the settlement papers for execution, he says:

"They must have been presented to them for the reason that they refused to sign the note and draft as I at the time endorsed on the back of the draft."

The occurrences to which he refers had transpired several years before, and though he could not then remember if he had received the bill of lading, from the foregoing facts we are led to the conclusion that it was in the possession of the Bank of Lafourche with the other papers. It is made very clear by the testimony of the cashiers of these two banks that they would never have delivered to Bereaud or LeBlanc the bill of lading, unless they had previously complied with the requirements of the settlement papers. No one can believe that either of them would have so flagrantly violated his instructions. Even if there had not been instructions in reference to the execution of the settlement papers, the cashiers would not have delivered the bill of lading without authorization from plaintiff company as the thresher had been consigned to its own order.

The defendant claims that the machine was delivered at Thibodaux to Bereaud by Schyxnider, station agent of the Texas and Pacific R. R. Company. Schyxnider says he delivered it on a bill of lading presented by Bereaud, but is unable to say where Bereaud had gotten it. He admits that the bill under which the thresher had been sent according to the first shipment, was never delivered or surrendered to him, and that when such bills are surrendered the dates of their surrender are stamped on such bills as proof of satisfaction to railroad companies. No such surrender is shown, and the only conclusion is that the machine was delivered to Bereaud by Schyxnider on some other bill of lading, which possibly was the one that accompanied the shipment of the second thresher, which it is admitted, had been returned to defendant company. The bill of lading was certainly not given to Bereaud by plaintiff company, as the bill they had taken had been sent to the bank at Donaldsonville, and from there had been transmitted to the Bank of Lafourche from where it would not have been turned over to anyone without the order or consent of plaintiff company.

In the first bill of lading upon which this suit is grounded the destination of the machine was at Lafourche Crossing. Chas. J. LeBlanc, who had ordered it, was to be notified at Donaldsonville. By mistake the thresher was sent to Donaldsonville. It should have gone through to the point of destination, and LeBlanc notified of its arrival there. The failure of sending the machine through as the bill of lading required, created the confusion which resulted and caused the issuance of the shipment of another machine, and the issuance of another bill of lading. In that regard defendant company was at fault as there was no justification for the stopping of the thresher at Donaldsonville.

It therefore follows that if the thresher was delivered to Bereaud on the second bill of lading, this was caused by the fault of defendant company. It should have been delivered under the original bill of lading, and would have been so delivered if the company had carried out its contract of affreightment. If it had been turned over to LeBlanc or Bereaud under the proper bill of lading the settlement papers would, prior to the delivery of the bill by the Bank of Lafourche have been properly executed, and plaintiff company would have obtained the price of the machine. Its failure to recover that amount was due to the fault of defendant company for which it was properly held responsible. In any event, the defendant company had no authority to deliver the thresher to Bereaud without the authority of plaintiff to whose order it was consigned under the bill of lading. Its delivery to Bereaud under the second bill of lading or any other which had been issued by defendant company, cannot absolve it from liability, unless it can escape through the plea of estoppel which it has filed as a defense in the case.

The record shows that plaintiff, in a former suit, asked for judgment against LeBlanc and Bereaud for the price of the machine with interest, attorney's fees, etc.

The defendant company pleads that plaintiff by thus instituting and prosecuting a legal action for the purchase price of the machine has thereby elected to hold the purchasers and made choice of a remedy to hold these purchasers responsible for the cause of action which is set up herein against defendant, and that by virtue of the choice and remedy so made, is estopped from pursuing the same demand against defendant.

Counsel for defendant refer us in support of their plea of estoppel to Gaudet vs. Gauthreaux, 40 La. Ann. 187, 3 So. 645; B. Lowenstein & Bros. vs. Glass et al., 48 La. Ann. 1422, 20 So. 890; Robb vs. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52.

In the 40 Annual case, it appeared that plaintiff had sold a tract of land to two ladies in which their husbands had joined to authorize them to buy, and only for that purpose. In executory proceedings sued out by plaintiff on the notes given for the property, plaintiff alleged that he had sold it to the two ladies, and that their husbands had appeared to authorize their wives to sign. Plaintiff in a subsequent suit, as is explained in that case, brought his demand against the husbands and their wives which was founded on the averment that the sale of the land was made by plaintiff to the husbands.

Obviously, no two actions could have been more contradictory, as plaintiff in the second suit was attempting to repudiate his prior judicial declaration that the wives had signed the notes as purchasers, and not their husbands who had appeared only to give their sanction to the transaction.

In B. Lowenstein & Bros. vs. Glass et al., 48 La. Ann. 1422, 20 So. 890, the subsequent demand filed was equally inconsistent and destructive of the prior action. In the case of Robb vs. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52, the Court in passing on this question said:

"A party may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge or means of knowledge of such facts as would authorize a resort to each will preclude him thereafter. from going back and electing again."

In this case plaintiff had the right to prosecute his demand against either LeBlanc and Bereaud, or the defendant railway company. They were both responisble to plaintiff which had the right to choose

one of the two modes of redress. There is nothing contradictory in the position it occupies in this suit from that which was taken by it in its demand filed against the purchasers of the machines. There is nothing so inconsistent between the two actions that the assertion plaintiff makes in this suit "involves the negation or repudiation of the other." There was nothing done by plaintiff in its suit against LeBlanc and Bereaud that could have induced defendant company to have taken a position that it would not otherwise have assumed to its detriment on injury. On the contrary, if plaintiff had been successful in that suit the result would have enured to the benefit of defendant. Such are the considerations which usually govern in estoppels in pais, founded as they are on principles of justice and equity, and there is no reason why they should not be invoked in this case where an estoppel by record is relied upon by defendant railway company. The estoppel pleaded was properly overruled, and judgment was correctly rendered for the amount demanded.