**IBJ SCHRODER BANK & TRUST COMPANY, as Trustee, Plaintiff–Appellee,**

**Employees' Retirement System of Alabama, Plaintiff–Intervenor–Appellee,**

v.

**RESOLUTION TRUST CORPORATION, as Conservator for Franklin Savings Association, Defendant–Appellant.**

No. 1252, Docket 93–7858.

United States Court of Appeals, Second Circuit.

Argued Feb. 22, 1994.

Decided June 15, 1994.

**371**

Michael A. Cooper, New York City (Theodore Edelman, Diane D'Arcangelo, Scott L. Lessing, Sullivan & Cromwell, Elinor R. Hoffmann, Carolyn T. Ellis, Coudert Brothers, of counsel), for plaintiff-appellee.

Mitchell A. Karlan, New York City (Robert F. Serio, Colleen D. Duffy, W. James Hall, Gibson, Dunn & Crutcher, of counsel), for plaintiff-intervenor-appellee.

Glen H. Kanwit, Chicago, IL (David B. Goroff, John P. Ratnaswamy, Claudette P. Miller, Hopkins & Sutter, Chicago, IL, Jonathan W. Miller, Robin D. Adelstein, Jennifer L. Jones, Dewey Ballantine, New York City, of counsel), for defendant-appellant.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and LASKER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Resolution Trust Corporation ("RTC"), as conservator for Franklin Savings Association, appeals from a judgment of the United States District Court for the Southern District of New York (Leval, J.) holding RTC's purported repudiation of an indenture and the bonds issued thereunder to be unauthorized, void and of no effect. *See* 803 F.Supp. 878. RTC also appeals from the district court's order denying post-judgment relief pursuant to Rules 60(b)(6), 52(b), and 59 of the Federal Rules of Civil Procedure. Because we conclude that RTC's repudiation was effective, we reverse the district court's judgment and remand for further proceedings.

On December 12, 1984, Franklin, a federally-insured stock savings and loan association, issued a series of zero coupon bonds with an aggregate face value of $2.9 billion, pursuant to an Indenture between Franklin and IBJ Schroder Bank & Trust Company as Trustee for the bondholders. The bonds were issued in three tranches with terms respectively of 30, 35 and 40 years. As provided in the Indenture, Franklin furnished the Trustee with collateral to secure payment of the bonds at maturity. The collateral, termed "Eligible Collateral," consisted of cash and certificates issued by the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association and the Government National Mortgage Association. The Indenture provided that, in an "Event of Default," the Trustee was to liquidate the Eligible Collateral and purchase U.S. Treasury securities and other similar government obligations, i.e., Eligible Zero Coupon Securities, in an amount sufficient to pay the principal amount of the outstanding bonds at their respective maturities. The Indenture provided further that the appointment of a conservator for Franklin would be an "Event of Default."

* United States District Judge for the Southern District of New York, sitting by designation.

RTC, a wholly-owned government corporation, was created by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, 369, "to manage and dispose of the assets acquired from failed thrifts." H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 308 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 104. A primary function of RTC is to act as the conservator or receiver for failed thrift institutions, operating "in a manner which ... maximizes the net present value return from the sale or other disposition" of assets under its control. 12 U.S.C. § 1441a(b)(3)(C)(i). To assist RTC in its role, Congress has conferred on it certain extraordinary powers, including the right to repudiate contracts of the controlled institution that it determines to be burdensome, and whose repudiation would promote the institution's orderly administration. *See* 12 U.S.C. §§ 1441a(b)(4)(A), 1821(e)(1).

On February 16, 1990, the Office of Thrift Supervision ("OTS") appointed RTC as conservator for Franklin. Acting pursuant to authority granted it by the Indenture, section 1102(c), and by statute, 12 U.S.C. § 1821(e)(12), RTC instructed the Trustee not to pursue the Event-of-Default remedies available to it under the Indenture, and the Trustee refrained from so doing.

In the weeks that followed, representatives of RTC and the Trustee attempted to resolve some of the issues involving their respective rights, and on March 6, 1990, a "standstill agreement" respecting certain of these rights was reached. The Trustee agreed that it would not exercise any of its rights under the Indenture without first giving RTC fifteen days written notice. RTC agreed in turn that it would not disaffirm or repudiate the Indenture or the bonds without having given ten days prior notice to the Trustee.

The Indenture also obligated the Trustee to liquidate the Eligible Collateral and purchase the Eligible Zero Coupon Securities if Franklin submitted a report to the OTS disclosing that it had failed to meet certain regulatory net worth or capital requirements. If within ninety days after the filing of such a report Franklin failed to report to OTS that it again was in compliance with regulatory net worth or capital requirements, the Trustee was obligated to "defease" the bonds by transferring the U.S. Treasury securities and other government obligations to defeasance trusts held by the Trustee for the benefit of the bondholders.

On April 10, 1990, RTC, as conservator for Franklin, submitted a form to OTS indicating that Franklin was not in compliance with regulatory minimum capital requirements. This triggered the Trustee's obligation to liquidate the Eligible Collateral. Aware that RTC might exercise its statutory power to repudiate the bonds and the Indenture, the Trustee filed a complaint in the United States District Court for the Southern District of New York on April 24, 1990 seeking, among other things, a declaration that the Trustee was both entitled and obligated to pursue remedies available under the Indenture.

Although RTC was aware of its right under 12 U.S.C. §§ 1441a(b)(4)(A) and 1821(e)(1) to repudiate or disaffirm the bonds at issue, it did not immediately do so. Instead, on April 10, 1990, its Board of Directors adopted a policy accompanied by a news release stating that it would repudiate or disaffirm direct collateralized borrowings, such as the bonds, within sixty days. Thereafter, on May 30, 1990, RTC notified the Trustee that it intended to disaffirm and repudiate the Indenture and the bonds on June 9, 1990 (60 days after the April 10th notice). In a letter that accompanied the notice of intent, Michael Tucci, RTC's Senior Counsel, stated that RTC reserved the right to reconsider its position and ultimately might decide not to repudiate. However, on June 8, 1990, Senior Counsel Tucci sent the Trustee a letter which read in pertinent part as follows:

> Pursuant to its authority under Section 11(e) of the Federal Deposit Insurance Act, as amended by Section 212 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), made applicable to the RTC under Section 501 of FIRREA, the Conservator hereby disaffirms and repudiates the Indenture and the Bonds issued thereunder, effective June 9, 1990.

The Conservator will be in contact with you to discuss all matters relating to the repudiation of the Indenture and Bonds, including procedures for payment of the Bonds and the orderly return of the Eligible Collateral to the Conservator. For your information, a copy of the RTC's April 10, 1990 Policy Statement regarding such matters is attached.

You are requested to immediately notify the Bondholders, in the manner provided in the Indenture, of the repudiation of the Indenture and Bonds, and to confirm such notice to the undersigned.

You are again directed to refrain from taking any actions pursuant to Sections 604, 607, 1102, and 1301 of the Indenture. The Conservator will hold you strictly responsible for any losses or damages incurred by the Conservator or any other adverse financial effects arising out of or as a result of any such action taken by you without the prior written consent of the Conservator.

A similar letter was sent to Security Bank of Kansas City, custodian of the Eligible Collateral. It read in part:

This letter is to inform you that effective June 9, 1990, the Resolution Trust Corporation ("RTC") as conservator of Franklin (the "Conservator") has disaffirmed and repudiated the Indenture and the Bonds issued thereunder. Attached hereto is a letter dated June 8, 1990, from the Conservator notifying the Trustee of this action.

On July 25, 1990, RTC informed the Trustee by letter that on August 8, 1990, it would tender to the Trustee the accreted value of the bonds, i.e., $124,626,640.24. At the same time, it issued a news release concerning the payment which stated in part:

The Resolution Trust Corporation (RTC) today announced August 8, 1990, as the payment date for $2.9 billion in zero coupon bonds from Franklin Savings Association, Ottawa, Kansas.

The GNMA/FHLMC/FNMA–Secured bonds, series A, due 2014, 2019, and 2024, had been disaffirmed by the RTC and repudiated on June 9, 1990.

On July 9, 1990, RTC filed its answer to the Trustee's amended complaint in the April 24th action with a counterclaim against the Trustee, and a third-party complaint against Security Bank of Kansas City, the holder of the Eligible Collateral, in which RTC repeatedly alleged that it had repudiated the Indenture and Bonds on June 9, 1990.

Following a "trial" consisting largely of written submissions, see 803 F.Supp. at 879, the district court correctly noted that Section 1821(e)(1) empowered RTC as conservator to repudiate the bonds if, in RTC's discretion, the performance of the bonded obligation was determined to be burdensome and the repudiation of which would promote the orderly administration of Franklin's affairs. Id. at 882. It then held that RTC had satisfied the requirements of the statute, i.e., that "RTC has satisfactorily demonstrated that it made the required determinations." Id. at 883. The district court then pointed out in some detail that the determinations actually were made by William Roelle, RTC's Director of Resolutions and Operations, after consultation with in-house counsel Michael Tucci, and that Roelle made the appropriate determinations concerning burdensomeness and the promotion of orderly administration of Franklin's affairs. Id. at 883–84. The district court also held that the repudiation decision was not void as arbitrary or capricious in that RTC acted lawfully within its discretion in its assessment of burdensomeness and the promotion of orderly administration. Id. at 884. The district court held further that the act of repudiation was not untimely, stating that "the delay was in large measure occasioned by the RTC's worry that if the RTC conservancy should be set aside in a pending court challenge, the benefits resulting from repudiation, which the RTC intended for depositors and taxpayers, might have redounded to the windfall profit of the shareholders of Franklin at the expense of the Bondholders." Id.

■ If, as the district court thus implicitly held, Roelle, as Director of Resolutions and Operations, could act on behalf of RTC in making the determinations concerning burdensomeness and the orderly administration of Franklin's affairs, the determinations that

RTC was required by statute to make, it would appear that Roelle also had the authority to act on behalf of RTC in giving effect to his determinations. The district court held, however, that because RTC's bylaws and delegation of power contained no express grant of such authority, it did not exist. We disagree.

Under the heading "Powers of the Board of Directors," RTC's bylaws read as follows:

> The management of the Corporation shall be vested in the Board of Directors, which shall have all powers specifically granted by the provisions of Title V of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and other laws of the United States and such incidental powers as shall be necessary to carry out the powers so granted. Within the limitations of the law, the Board of Directors may delegate any of its specific or incidental powers to any standing or special committee of the Corporation or to any officer or agent of the Corporation upon such terms and conditions as it shall prescribe, except the power to amend these Bylaws or to adopt new Bylaws.

Pursuant to this grant of authority, the Board of Directors, after specifying certain powers delegated to the Director of Resolutions and Operations, empowered him

> [t]o do such other things necessary to carry on a savings association's business and to conserve and preserve a savings association's assets and property ...; *provided,* ... no actions taken pursuant to this paragraph shall exceed the authority delegated pursuant to any other Section of these Delegations of Authority....

As appears from the foregoing, neither the bylaw nor the delegation of power thereunder contains a specific reference to repudiation. Assuming that such lack of specificity demonstrates ambiguity, resort to a time-tested method of resolving such ambiguity clearly is called for. It is well established that "[t]he rules of contract interpretation are generally applicable to the interpretation of bylaws." 8 *Fletcher Cyc. Corp.* § 4195 (rev. 1982). For over a century, courts have looked to the conduct of the parties in resolving ambiguities in contractual language. In *Brooklyn Life Ins. Co. v. Dutcher,* 95 U.S. (5 Otto) 269, 273, 24 L.Ed. 410 (1877), the Court said:

> The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done.

In *Old Colony Trust Co. v. Omaha,* 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913), the Court said:

> Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence.

This Court has, of course, followed suit. *See Croce v. Kurnit,* 737 F.2d 229, 235 (2d Cir.1984); *In re Schuman Sons Jewelers, Inc.,* 90 F.2d 606, 607 (2d Cir.1937). *See also* 4 *Williston on Contracts* 3d ed. § 623 ("An important aid in the interpretation of contracts is the practical construction placed on the agreement by the parties themselves."); *Restatement (Second) of Contracts* § 202, cmt. g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."). In 18 C.J.S. *Corporations* § 116, the law with reference to corporate bylaws is summed up as follows:

> The board of directors of a corporation may interpret an ambiguous by-law without formality, the interpretation arising from their conduct and methods of transacting business, and the general rule as to recognizing a practical construction by the parties applies, so that, in the case of ambiguity in a by-law, a court will not give it a positive construction opposed to any consistent practical construction which it has received from the corporation and its members, where such practical construction is not unreasonable, or contrary to the principles of justice or morality or to any rule of law or public policy. (Footnote citations omitted.)

In the light of the above-described chronology of the events that preceded the judgment below, we are convinced that the RTC Board

of Directors knew and fully approved of Roelle's exercise of the power of repudiation. In the lawsuit brought by the Trustee on April 24, 1990, RTC made its position clear with regard to the repudiation by Roelle when it stated repeatedly (32 times) in its answer and third-party complaint that it had repudiated the Indenture and Bonds on June 9, 1990. This repudiation, in accordance with RTC's customary practice, was effected by Roelle. We hold that RTC's bylaws and delegation of power thereunder, as interpreted and applied by its Board, authorized Roelle to make the repudiation decision at issue herein.

█ Because we so hold, we need not consider the merits of the district court's rejection of RTC's post-judgment formal ratification of Roelle's acts. We note only that, proof of the formal ratification aside, there was strong evidence of prejudgment ratification which could have been relied upon by the district court had it been timely argued by RTC. We therefore feel it incumbent to make a few observations on the point. *See Union Pacific R. Co. v. Chicago, Rock Island, & Pacific R. Co.,* 163 U.S. 564, 593, 16 S.Ct. 1173, 1184–85, 41 L.Ed. 265 (1896). In the seminal case of *Robb v. Vos,* 155 U.S. 13, 43, 15 S.Ct. 4, 14, 39 L.Ed. 52 (1894), the Court said that "one of the most unequivocal methods of showing ratification of an agent's act is the bringing of an action based upon such an act." This rule applies with equal force where the affirmative allegations are made by the defendant. In *Robb,* for example, the persons who were held to have ratified an unauthorized act were defendants and cross-petitioners. RTC's allegation of proper repudiation, repeated thirty-two times in its answer and cross-complaint, must be recognized as strong evidence of ratification. *See also Gross v. Regor Finance Co.,* 96 F.2d 37, 38 (5th Cir.1938); *Wolfe v. Shell Petroleum Corp.,* 83 F.2d 438, 443 (10th Cir.), *cert. denied,* 299 U.S. 553, 57 S.Ct. 19, 81 L.Ed. 407 (1936). Ratification also may be found to exist by implication from a principal's failure to dissent within a reasonable time after learning what had been done. "If a corporation acquires or is charged with knowledge of an unauthorized act undertaken by someone on its behalf, and does not repudiate that act within a reasonable time, but instead ac-

quiesces in it, the corporation is bound by the act." *In re Martin–Trigona,* 760 F.2d 1334, 1341 (2d Cir.1985). *See also Law v. Cross,* 66 U.S. (1 Black) 533, 539–40, 17 L.Ed. 185 (1862); *Leviten v. Bickley, Mandeville & Wimple, Inc.,* 35 F.2d 825, 827 (2d Cir.1929); *Restatement (Second) of Agency* § 97.

The interests of the public are at stake in this litigation. These interests should not be thwarted by what could be at most a technical procedural flaw. The judgment of the district court dated October 21, 1992 is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.