PAVEY ENVELOPE AND TAG CORPORATION, Plaintiff-Appellee, v. DIAMOND ENVELOPE CORPORATION, Defendant-Appellant.

Second District   No. 2—94—0821

Opinion filed April 4, 1995.

Bruce C. Davidson, of Chicago, for appellant.

David S. Miller, of Law Offices of Baker & Miller, of Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Diamond Envelope Corporation, appeals the circuit court's judgment which registered a New Jersey judgment obtained by plaintiff, Pavey Envelope & Tag Corporation, and denied defendant leave to file a counterclaim. Defendant contends that the New Jersey court lacked jurisdiction pursuant to its long-arm statute as limited by Federal due process principles. Alternatively, defendant contends that the circuit court erred by refusing defendant's proposed counterclaim.

Both parties are in the business of manufacturing envelopes. Defendant does so in Naperville, while plaintiff's principal place of business is in New Jersey. Defendant received a large order from Leo Burnett, a large Chicago advertising agency. Alan Jania, defendant's president, decided that defendant could not meet the strict time constraints without enlisting the help of another company. Jania thought of plaintiff because a business acquaintance had become plaintiff's sales manager and had previously expressed plaintiff's desire to do business with defendant.

Jania telephoned his friend. The parties discussed the proposed transaction several times by phone, and plaintiff eventually agreed to do the work. Defendant accepted the offer by mailing a purchase order to plaintiff in New Jersey. The purchase order required plaintiff to deliver the envelopes to an address in Illinois.

Plaintiff filed a complaint in the New Jersey superior court, alleging that defendant had failed to pay the balance due on its account. On October 12, 1993, the New Jersey court entered a default judgment in favor of plaintiff for $15,271.31, plus costs. On December 3, 1993, plaintiff's petition to register the foreign judgment was filed in the circuit court of Du Page County. Defendant objected on the ground that the New Jersey court had lacked personal jurisdiction over it. Defendant also sought leave to file a counterclaim.

Defendant's proposed counterclaim alleged that plaintiff had failed to comply with the time constraints imposed by Leo Burnett. Defendant alleged that it was told by plaintiff's employees that the job could not be finished on time because the machinery was broken. However, upon sending representatives to plaintiff's plant, defendant learned that plaintiff had postponed its job to work on a project for another customer. Defendant sought consequential damages, alleging

that as a result of plaintiff missing the deadline its relationship with Leo Burnett was damaged.

The court entered an order registering the New Jersey judgment and denying defendant leave to file its counterclaim. Citing *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, the court held that a counterclaim may not be filed in an action to register a foreign judgment. Defendant perfected this appeal.

Defendant first contends that the court erred in registering the foreign judgment because the New Jersey court lacked personal jurisdiction under the New Jersey long-arm statute (N.J. Ct. R. 4:4-4(c) (1995)), as constrained by Federal due process principles. Plaintiff responds that jurisdiction in New Jersey was proper.

■ The United States Constitution provides that the judgments of a State court are entitled to full faith and credit in every other State. (U.S. Const., art. IV, § 1.) To implement the full faith and credit clause, Illinois has enacted the Uniform Enforcement of Foreign Judgments Act (the Act) (735 ILCS 5/12—650 *et seq.* (West 1992); *Practice Management Associates, Inc. v. Thurston* (1992), 225 Ill. App. 3d 470, 473). Under the Act, a judgment debtor may not collaterally attack the foreign judgment except on the ground of fraud in its procurement or the rendering court's lack of jurisdiction. (*Practice Management*, 225 Ill. App. 3d at 474.) Thus, when a foreign judgment is sought to be registered, the trial court may consider the question of the foreign court's jurisdiction. (*Ace Metal Fabricating Co. v. Arvid C. Walberg & Co.* (1985), 135 Ill. App. 3d 452, 457.) However, there is a strong presumption that the rendering court had jurisdiction, and it is the defendant's duty to rebut the presumption. (*Ace Metal Fabricating*, 135 Ill. App. 3d at 457; *Paine, Webber, Jackson & Curtis, Inc. v. Rongren* (1984), 127 Ill. App. 3d 85, 90.) In determining jurisdiction, the foreign State's law, as limited by due process, controls. *Texas Axles, Inc. v. Baillie* (1986), 140 Ill. App. 3d 760, 761.

■ ■ The New Jersey long-arm statute, as does Illinois', authorizes the State's courts to exercise jurisdiction over a nonresident defendant to the maximum extent consistent with Federal due process principles. (N.J. Ct. R. 4:4-4(c) (1995); see 735 ILCS 5/2—209 (West 1992).) Under the due process clause, a defendant is not subject to personal jurisdiction in the forum State unless he or she has certain minimum contacts with that State such that bringing the action there does not offend " 'traditional notions of fair play and substantial justice.' " (*Chalek v. Klein* (1990), 193 Ill. App. 3d 767, 770, quoting *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) A court must consider three criteria in determining whether a trial court's exercise of juris-

diction over a nonresident satisfies Federal due process standards: (1) whether the nonresident defendant has sufficient minimum contacts with the forum State that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of defendant's contacts with the forum State; and (3) whether it is reasonable to require defendant to litigate in the forum State. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-84; *Autotech Controls Corp. v. K.J. Electric Corp.* (1993), 256 Ill. App. 3d 721, 725.

In situations similar to the present one, New Jersey courts have consistently found personal jurisdiction over the nonresident defendant to be consistent with due process principles. In *Avdel Corp. v. Mecure* (1971), 58 N.J. 264, 277 A.2d 207, the New Jersey Supreme Court found jurisdiction over a New York corporation which ordered rivets from plaintiff corporation, knowing that they would either be manufactured in New Jersey or procured from other sources. The court noted that the rivets were to be delivered to New York. However, it found that this did not defeat jurisdiction in New Jersey, noting that the contract had a significant impact on both States. *Avdel Corp.*, 58 N.J. at 272-73, 277 A.2d at 211-12; see also *Elizabeth Iron Works, Inc. v. Kevon Construction Co.* (1976), 155 N.J. Super. 175, 179-80, 382 A.2d 648, 650-51, *aff'd* (1978), 75 N.J. 332, 382 A.2d 636 (Pennsylvania defendant ordered steel beams from New Jersey plaintiff, knowing they were to be specially fabricated to his order there); *Resin Research Laboratories, Inc. v. Gemini Roller Corp.* (1969), 105 N.J. Super. 401, 404, 252 A.2d 415, 416 ("since Gemini contacted Resin in New Jersey and Resin's work was done here, where it was reasonable to expect it would be done," Gemini was subject to jurisdiction in New Jersey); *Maglio & Kendro, Inc. v. Superior Enerquip Corp.* (1989), 233 N.J. Super. 388, 558 A.2d 1371 (Wisconsin court had jurisdiction of New Jersey defendant where defendant requested plaintiff to perform executive search services in Wisconsin).

■ In the present case, there is no question that defendant contacted plaintiff in New Jersey and that the parties expected the work to be done substantially in New Jersey. Defendant thus had fair warning that it might be called upon to litigate in that State. Defendant acknowledges that the cause of action arose out of its contact with the forum State. Finally, defendant points to nothing particularly unfair about requiring it to defend the action in New Jersey. Defendant argues that its witnesses would have been required to travel to New Jersey. However, it is equally true that plaintiff's witnesses would have had to travel to Illinois had the action been

litigated here. In every case involving a nonresident defendant, the defendant will necessarily have to bring witnesses to the forum State if it wishes to defend the action. If this fact alone were sufficient to defeat jurisdiction, so-called long-arm jurisdiction would cease to exist.

Our conclusion that jurisdiction was proper would not change if we were to decide the issue pursuant to Illinois law. In cases involving nonresidents who purchase goods from an Illinois seller, Illinois courts have drawn a distinction between "active" and "passive" purchasers. If the nonresident buyer is a passive party who merely places an order by mail or telephone and accepts the seller's stated price, courts will not exercise *in personam* jurisdiction over the nonresident purchaser. (*Chalek v. Klein* (1990), 193 Ill. App. 3d 767, 773.) On the other hand, "[i]f the buyer departs from a passive role by dictating or vigorously negotiating contract terms or by inspecting production facilities, the unfairness which would be associated with the exercise of long arm jurisdiction over that buyer dissipates, and he or she will be subject to personal jurisdiction in the courts of the seller's State." *Chalek*, 193 Ill. App. 3d at 773.

*Chalek* noted that active purchasers are generally major business organizations rather than individual consumers or even small shopkeepers. The court pointed out that distinguishing between active and passive purchasers protects the ordinary mail-order consumer who merely orders a stock item from a catalog while at the same time protecting sellers who manufacture custom-built products according to the nonresident buyer's specifications. *Chalek*, 193 Ill. App. 3d at 373.

In *G.M. Signs, Inc. v. Kirn Signs, Inc.* (1992), 231 Ill. App. 3d 339, this court applied the *Chalek* active/passive distinction to a Missouri corporation that purchased specially ordered signs from an Illinois seller. We stated:

> "In the present case, the affidavits and pleadings establish that defendant actively initiated and negotiated an ongoing commercial relationship with plaintiff, an Illinois seller. Plaintiff did not advertise or solicit defendant's business. *** Defendant placed the order for the products which are the subject of the particular transaction in controversy." *G.M. Signs*, 231 Ill. App. 3d at 344.

Although the court referred to the ongoing nature of the relationship in that case, the opinion gives no indication that this was a critical factor. There, as here, the nonresident purchaser initiated the transaction, which called for specially ordered merchandise. Although the evidence is somewhat sketchy, it appears that defendant supplied plaintiff with special dies for use in manufacturing the

envelopes. Since defendant has the burden of negating jurisdiction, we must resolve any doubts arising from the incompleteness of the record in favor of the New Jersey court's jurisdiction.

Defendant contends that jurisdiction was lacking in New Jersey because the "final act" necessary to the completion of the contract, the delivery of the envelopes to plaintiff's customer, was to occur in Illinois. Defendant relies on *Swissland Packing Co. v. Cox* (1994), 255 Ill. App. 3d 942. Defendant's reliance is misplaced. In *Swissland Packing*, the court held only that jurisdiction was proper in Illinois where the nonresident seller contracted to deliver goods in Illinois. (*Swissland Packing*, 255 Ill. App. 3d at 944.) The court did not declare that the final destination of the goods is the only possible *situs* for any ensuing litigation.

In *Texas Axles, Inc. v. Baillie* (1986), 140 Ill. App. 3d 760, plaintiff sought to register a Texas judgment. Defendant resisted on the ground that the Texas court lacked jurisdiction. The Illinois Appellate Court upheld the Texas court's jurisdiction where the goods were manufactured in Texas but delivered to Illinois. (*Texas Axles*, 140 Ill. App. 3d at 762.) The courts in *Swissland Packing* and *Texas Axles* implicitly echoed the observation made by the New Jersey Supreme Court that more than one State may be interested in a controversy and thus serve as the forum for its adjudication. As the Supreme Court has stated:

> "Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (*McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 222-23, 2 L. Ed. 2d 223, 226, 78 S. Ct. 199, 201.)

We hold that New Jersey had such an interest, and the New Jersey court had jurisdiction over the Illinois defendant.

■ Defendant next contends that the court erred in denying it leave to file its counterclaim. Defendant acknowledges that it may not attack collaterally a judgment entered by a foreign court which had jurisdiction. However, it contends that its counterclaim is not a collateral attack since it does not arise from the same facts as plaintiff's complaint. Plaintiff disputes the contention that the claims are not based on the same facts, but argues that the issue is rendered moot by New Jersey's mandatory counterclaim rule.

Defendant cites *Lehman v. Continental Health Care, Ltd.* (1992),

240 Ill. App. 3d 795, for the general proposition that a defendant in a previous breach-of-contract action may file a second suit based on the same contract without violating principles of *res judicata* or collateral estoppel where the relief sought does "not nullify or impair the money judgment entered in favor of" plaintiff in the prior proceeding. (*Lehman*, 240 Ill. App. 3d at 803.) Defendant maintains that the relief sought in its proposed counterclaim would not "nullify or impair" plaintiff's money judgment from New Jersey, but would merely award defendant additional relief in the form of consequential damages.

We agree with plaintiff, however, that defendant's reliance on *Lehman* is unavailing. *Lehman* expressly held that a defendant is prevented from relitigating claims that he was required to present in a counterclaim deemed mandatory, rather than permissive, in the jurisdiction where the original proceeding occurred. (*Lehman*, 240 Ill. App. 3d at 803.) The New Jersey Court Rules provide that "[n]onjoinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims." (N.J. Ct. R. 4:30A (1995).) The entire controversy doctrine requires that a party litigate all aspects of a controversy in a single proceeding. (*Mori v. Hartz Mountain Development Corp.* (1983), 193 N.J. Super. 47, 53, 472 A.2d 150, 153.) This is true " 'even where the belatedly asserted cause of action is an independent one, in the sense of itself being separately adjudicable.' " *Mori*, 193 N.J. Super. at 52-53, 472 A.2d at 153, quoting *Malaker Corp. Stockholders Protection Committee v. First Jersey National Bank* (1978), 163 N.J. Super. 463, 496, 395 A.2d 222, 238.

We have no difficulty concluding that defendant's counterclaim is barred by New Jersey's entire controversy doctrine. Plaintiff sued defendant for the breach of a contract to purchase envelopes which plaintiff was to manufacture. Defendant's counterclaim seeks damages for plaintiff's breach of the same contract. Generally, a party pleading a cause of action for breach of contract must show its own performance under the contract or an excuse for nonperformance. (17A C.J.S. *Contracts* § 538a (1963); *Berry v. Oak Park Hospital* (1993), 256 Ill. App. 3d 11, 19.) In entering a default judgment for plaintiff for the entire amount claimed, the court must implicitly have found that plaintiff fully performed under the contract. Defendant's proposed counterclaim is based on the allegation that plaintiff's performance was at least partially defective. It is difficult to believe that the New Jersey courts applying the entire controversy rule would permit a claim which questions one of the essential elements of the cause of action asserted in the prior action to be asserted in a sepa-

rate action. Since the counterclaim was mandatory in the jurisdiction where the judgment was rendered, it may not be asserted in a collateral proceeding. *Lehman,* 240 Ill. App. 3d at 803.

Defendant points out that plaintiff's New Jersey complaint does not specifically allege plaintiff's performance under the contract and urges that this question may now be litigated in a collateral proceeding. As noted previously, however, the plaintiff's performance is an essential element of a cause of action for breach of contract. A complaint which fails to allege the plaintiff's performance is not necessarily defective, and the failure to object to the complaint on that basis in the trial court waives the objection. (*Christensen v. Wick Building Systems, Inc.* (1978), 64 Ill. App. 3d 908, 911.) Thus, the failure to allege specifically plaintiff's performance does not demonstrate conclusively that the issue was not determined by the New Jersey judgment. Moreover, defendant cannot complain of this pleading defect in the collateral action.

■ In its reply brief, defendant complains that plaintiff failed to raise New Jersey's mandatory counterclaim provision in the trial court and has therefore waived that issue on review. However, plaintiff, as the appellee, is not strictly bound by the waiver rule. A reviewing court is not bound to accept the reasons given by the trial court for its judgment and may affirm the judgment on any basis, regardless of whether it was relied on by the trial court. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) Moreover, it was defendant, by its citation of *Lehman,* which injected the issue of the mandatory/permissive counterclaim distinction into this appeal. Plaintiff's citation of the New Jersey mandatory counterclaim rule was merely a response to defendant's assertion that it could assert a counterclaim which was deemed permissive by the jurisdiction where the original judgment was rendered. The contention is not waived, and the court did not err by denying defendant leave to file its proposed counterclaim.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN, P.J., and HUTCHINSON, J., concur.