## Lakeside Equipment Corp. v. Town of Chester

[795 A.2d 1174]

No. 00-575

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 15, 2002

*Patrick M. Ankuda* of *Parker & Ankuda, P.C.*, Springfield, for Plaintiff-Appellee.

*Thomas S. Durkin* of *Kramer & Durkin, P.C.*, West Dover, for Defendant-Appellant.

**Dooley, J.** Defendant Town of Chester appeals the superior court's summary judgment determination that plaintiff Lakeside Equipment Corporation is entitled to enforcement of an Illinois judgment requiring the Town to pay Lakeside for equipment specially manufactured for the Town's waste water treatment facility. The Town contends that the Illinois judgment is unenforceable because its plant operator was not authorized to order the equipment, and thus there was no basis for exercising personal jurisdiction over it. We conclude that the record is insufficient to determine whether the judgment was jurisdictionally sound; accordingly, we reverse the superior court's decision and remand the matter for further proceedings.

The material facts alleged for purposes of summary judgment are undisputed. Lakeside is a Delaware corporation with a principal place of business in Bartlett, Illinois. On April 15, 1996, David Duquette, the plant operator for the Town's waste water treatment facility, contacted Lakeside and placed a verbal order to purchase replacement clarifiers for the plant. One week later, Lakeside acknowledged the order in a letter that itemized the cost of the equipment, which totaled approximately $40,000. Attached to the letter were the conditions of the sale, including a provision scheduling delivery of the equipment for June 1996. In response to the letter, Duquette sent Lakeside the Town's purchase order number. Lakeside designed and specially manufactured the equipment, and delivered it to the Town on June 24, 1996. Duquette received and accepted the equipment three days later.

On July 24, 1996, a Lakeside employee contacted Susan Spaulding, the Chester Town Manager, to determine why the Town had not paid for the equipment. Spaulding told the Lakeside employee that payment would be made within the week. The Town paid nothing, however, and later informed Lakeside that it would not pay for the equipment. After making formal demands for payment in September and October 1996, Lakeside submitted a demand for arbitration to the American Arbitration Association pursuant to the contract.

The Association acknowledged receipt of the demand for arbitration and informed the Town of the requested hearing locale in Chicago, Illinois. The Town neither responded to the letter nor participated in the June 24, 1997 hearing held before the arbitrator in Chicago, although it did pay $1000 in arbitration fees. In July 1997, the arbitrator asked the parties to submit briefs regarding jurisdiction and the authority of the Association to conduct the arbitration. Lakeside submitted a brief, but the Town did not respond. On August 25, 1997, the arbitrator entered an award in favor of Lakeside for approximately $51,000. Later, Lakeside petitioned for confirmation of the judgment in the Illinois circuit court. The Town neither responded to Lakeside's petition nor appeared in the Illinois court proceedings. On March 3, 1998, the Illinois circuit court confirmed the arbitration award against the Town and entered a judgment of approximately $53,000.

On March 31, 1998, Lakeside commenced the present action by filing a complaint in the Windsor Superior Court to domesticate the Illinois judgment. The Town appeared, filed an answer, and asserted a counterclaim challenging the validity of the underlying contract and the jurisdiction of the Illinois courts over the Town. The superior court initially denied Lakeside's motion to dismiss the Town's counterclaim, but later, in its November 3, 2000 decision, granted summary judgment to Lakeside. The court determined that it was required to give full faith and credit to the Illinois judgment because the evidence demonstrated that the Town's contacts with Illinois were sufficient for the courts of that state to assume personal jurisdiction over the Town with respect to the matter at issue. The court also concluded that, to the extent that the Town had valid objections concerning the scope of Duquette's authority to enter into the contract with Lakeside, the Town waived those objections by failing to raise them in the Illinois proceedings.

On appeal, the Town argues that (1) Duquette was without actual or apparent authority to bind the Town to the contract with ·Lakeside; (2) Lakeside had a dúty to confirm the scope of Duquette's authority to bind the Town to the contract; (3) Illinois lacked personal jurisdiction to enter a judgment against a Vermont town based upon a contract entered into by an unauthorized agent; (4) the superior court erred by granting Lakeside's motion for summary judgment after it had denied Lakeside's motion to dismiss the Town's counterclaim; and (5) the superior court failed to give the Town sufficient time to object to the judgment order submitted to the court by Lakeside following the court's decision in favor of Lakeside. We apply the same two-part test as that applied by the trial court: we examine whether there are genuine issues of material fact in dispute, and whether the moving party is entitled to judgment as a· matter of law. See *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 44, 572 A.2d 1382, 1387 (1990).

A sister-state judgment is normally "entitled to full faith and credit in the absence of a showing that [the] court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard." *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 58, 539 A.2d 534, 537 (1987); see *Cook v. Cook*, 342 U.S. 126, 128 (1951) (burden of undermining decree of sister state rests heavily upon assailant); *Hall v. McCormick*, 154 Vt. 592, 595, 580 A.2d 968, 970 (1990) (defendant has "heavy burden" of undermining foreign judgment, which is presumptively valid). Here, the Town contends that it did not have the minimum contacts for the Illinois courts to extend personal jurisdiction over it. In addition to disputing this contention, Lakeside argues that the Town waived its jurisdictional challenge by failing to raise it in the arbitration proceeding, when it had an opportunity to do so.

■ As a preliminary matter, we reject Lakeside's argument that the Town waived its right to raise the jurisdictional issue in this proceeding to domesticate the Illinois judgment. When a defendant fails to appear after having been served with a complaint in a state and a default judgment is entered, the defendant may defeat enforcement of that judgment in another forum by showing that the judgment was issued by a court lacking personal jurisdiction. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4430, at 292 (1981) ("a defendant who makes no appearance whatever remains free to challenge a default judgment for want of

personal jurisdiction"); *Hicks v. Evans*, 495 S.E.2d 588, 590 (Ga. Ct. App. 1998) (accord); *Video Prods. Distribs. v. Kilsey*, 682 A.2d 1381, 1382 (R.I. 1996) (per curiam) (accord); cf. *Driver v. Driver*, 148 Vt. 560, 562, 536 A.2d 557, 558 (1987) ("the jurisdiction of [a] Massachusetts court may be subject to collateral attack in Vermont if jurisdiction had not been contested and determined by the Massachusetts court").

■ Although the burden of overcoming the default judgment rests with the party attacking it, see *Kilsey*, 682 A.2d at 1382, where the issue of personal jurisdiction is resolved on summary judgment, the moving party retains the burden of establishing the absence of a genuine issue of material fact and entitlement to prevail as a matter of law. *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 (11th Cir. 1985). If the defendant in the action to domesticate the foreign default judgment ultimately fails to meet its burden of demonstrating that the judgment is jurisdictionally defective, any challenge on the merits of the lawsuit is foreclosed. See 18 C. Wright, A. Miller & E. Cooper, *supra*, at 291 ("Objections to personal jurisdiction remain open to the defendant who remains entirely aloof from the original proceeding, but if it is later concluded that personal jurisdiction existed the merits of the action are foreclosed unless relief can be had from the default judgment.").

■ Here, the Town chose not to participate in the Illinois proceedings based on its position that its agent had acted outside the scope of his authority, and thus the agent's contacts with Lakeside could not be imputed to it. Hence, the Town is not precluded from raising a jurisdictional challenge in the instant proceeding. Lakeside's arguments concerning the arbitration and forum-selection provisions contained in the "conditions of sale" attached to the letter sent in response to the plant operator's verbal order are unavailing in that they beg the question at hand — whether the contacts made by the plant operator can be attributed to the Town so as to impose personal jurisdiction over the Town and otherwise bind the Town.

■ "In determining jurisdiction, the foreign State's law, as limited by due process, controls." *Pavey Envelope & Tag Corp. v. Diamond Envelope Corp.*, 648 N.E.2d 1115, 1117 (Ill. App. Ct. 1995). Under the Illinois long-arm statute, Illinois courts may extend jurisdiction over any person who, in person or through an agent, transacts business within the state or makes or performs a contract substantially

connected with the state. See 735 Ill. Comp. Stat. 5/2-209(a)(1), (7) (1992). The statute also provides that an Illinois court may exercise jurisdiction on any other basis permitted under the constitutions of Illinois and the United States. *Id.* 5/2-209(c). If a basis for jurisdiction exists under the Illinois long-arm statute, the question becomes whether the court's exercise of jurisdiction comports with federal due process. *D.S. Am. (East) v. Elmendorf Grafica*, 654 N.E.2d 472, 478 (Ill. App. Ct. 1995).

Federal due process is satisfied when the defendant's contacts with the foreign state make it reasonable for the defendant to anticipate being haled into court in that jurisdiction. *Id.* The principal factors to be considered are (1) whether the nonresident defendant has had minimum contacts with the forum state so that there was fair warning that the defendant might have to defend a lawsuit there; (2) whether the action arose out of the defendant's contacts with the forum state; and (3) whether it is reasonable for the defendant to litigate in the forum state. *Id.*; see *Northern Aircraft*, 154 Vt. at 41-42, 572 A.2d at 1386.

In the area of contract law, Illinois courts have determined that a single business transaction may constitute sufficient minimum contacts to confer personal jurisdiction over a nonresident defendant. *Allerion, Inc. v. Nueva Icacos, S.A. de C.V.*, 669 N.E.2d 1158, 1163-64 (Ill. App. Ct. 1996). In such cases, the key factors center around who initiated the contact, where the contract was formed, and where performance was to be made. *Id.* at 1164. The mere fact that a nonresident defendant entered into a contract with a resident of the forum state to purchase or lease goods may not be enough for the forum state to exercise personal jurisdiction over the defendant, but a buyer who assumes an active rather than a passive role with respect to a transaction is generally subject to personal jurisdiction in the seller's state. See *Mellon First United Leasing v. Hansen*, 705 N.E.2d 121, 127 (Ill. App. Ct. 1998). The active/passive distinction employed by the Illinois courts seeks to protect "the ordinary mail-order consumer who merely orders a stock item from a catalog while at the same time protecting sellers who manufacture custom-built products according to the nonresident buyer's specifications." *Pavey Envelope*, 648 N.E.2d at 1118. Under this analysis, the exercise of personal jurisdiction over a nonresident buyer is justified where the buyer initiated a transaction calling for specially ordered merchandise. *Id.*

■ Here, the Town's plant operator, David Duquette, initiated the contact with Lakeside and ordered equipment that had to be custom-manufactured in Illinois to suit the particular requirements of the Town's facility. Duquette also (1) responded to Lakeside's confirmation letter by sending the corporation the Town's purchasing order number, and (2) later accepted delivery of the specially manufactured equipment. These contacts are sufficient to show that the Town played an active role in the transaction if they can be imputed to the Town. The imputation question is the central issue of this case. The superior court held that Duquette's contacts could be imputed to the Town because it was clear from the Chester Town Manager's response to Lakeside's initial request for payment that Duquette had "some" authority to act as the Town's agent to order parts from Lakeside.

Without question, "[t]he due process clause permits personal jurisdiction to be exercised over a defendant based upon acts of its agent." *Allerion*, 669 N.E.2d at 1164; see 735 Ill. Comp. Stat. 5/2-209(a) (1992). Indeed, the acts of corporations, including municipal corporations, necessarily concern the acts of their agents. Nor is there any question, as the superior court found, that Duquette had some authority to act as an agent of the Town in purchasing equipment for the waste water treatment facility. The Town effectively acknowledged this fact by agreeing to pay the Lakeside bill at a time when it allegedly was unaware of the extent of the cost of the equipment ordered by Duquette. Nevertheless, we must still determine whether Duquette's conduct in ordering $40,000 in equipment from Lakeside may be imputed to the Town. See *Magnecomp Corp. v. Athene Co.*, 257 Cal. Rptr. 278, 284 (Ct. App. 1989) (once agency has been determined, question becomes whether acts of agent should be imputed to principal).

■ Generally, the actions of an agent may be imputed to the principal for purposes of personal jurisdiction if (1) the agent acted within the scope of actual or apparent authority bestowed by the principal; or (2) the principal ratified the agent's actions after the fact. See *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001). The Town claimed that Duquette had no actual authority to purchase equipment beyond a certain cost without first obtaining the approval of the town selectboard. As the superior court noted, Lakeside has not disputed this claim. Therefore, the record does not

demonstrate that Duquette had actual authority to enter into the contract with Lakeside.

■ Apparent authority "derives from conduct of the principal, communicated or manifested to the third party, which reasonably leads the third party to rely on the agent's authority." *New England Educ. Training Serv., Inc. v. Silver Street P'ship*, 148 Vt. 99, 105, 528 A.2d 1117, 1120 (1987); see *Damian Servs. Corp. v. PLC Servs., Inc.*, 763 F. Supp. 369, 372 (N.D. Ill. 1991) (apparent authority exists where principal, through words or conduct, creates reasonable impression that agent has been granted authority to perform certain acts). The purpose underlying the doctrine of apparent authority is "to protect an innocent third party from difficulties in dealings with . . . an agent whose actual authority is cut down by limitations unknown to the person with whom he is dealing." *Blitz v. Breen*, 132 Vt. 455, 459, 321 A.2d 48, 50 (1974).

■ But the parameters of this doctrine "are sharply circumscribed when the principal is a municipal corporation." *City of Norwalk v. Bd. of Labor Rel.*, 538 A.2d 694, 696 (Conn. 1988). The general rule is that parties who contract with municipal corporations are bound to take notice of the power of a particular person or agency to make the contract. 10 T. Evans & J. O'Gallagher, McQuillin Mun. Corp. § 29.04, at 249 (3d ed. 1999); see *Laramore & Douglass, Inc. v. City of Anderson*, 222 F.2d 480, 484 (7th Cir. 1955) (anyone dealing with municipality is charged with obligation of inquiring into limitations on powers of its officers or boards); *City of Norwalk*, 538 A.2d at 696; cf. *Sinclair v. Town of Bow*, 480 A.2d 173, 176 (N.H. 1984) (rule that anyone dealing with agent of municipality is obligated to ascertain extent of agent's authority effectively excludes municipalities having doctrine of apparent authority applied against them, except to prevent unjust enrichment or manifest injustice).

■ Here, on the state of the summary judgment record, we find no evidence of a prior course of dealing or other circumstances indicating that the Town signaled to Lakeside that Duquette had the authority to enter into the contract at issue. Nor do we find ratification by the Town as a matter of law. Although the Chester Town Manager stated to Lakeside's representative that it would pay for the already-delivered equipment, her affidavit indicated that at the time she made the statement she did not know the cost of the equipment or that it exceeded the Town's authorization. See *Inn*

*Foods, Inc. v. Equitable Co-op. Bank*, 45 F.3d 594, 597 (1st Cir. 1995) (for there to be ratification, principal must have full knowledge of all material facts or must purposely ignore information within its control); *Athanas v. City of Lake Forest*, 657 N.E.2d 1031, 1037 (Ill. App. Ct. 1995) (ratification occurs when principal, with knowledge of material facts of unauthorized action, takes position inconsistent with nonaffirmation of action).

Nor does the record permit us to conclude that the Town ratified the contract by failing to object to it within a reasonable time after learning what had transpired or by accepting the benefits of the contract. See *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 375 (2d Cir. 1994) (ratification may exist by implication from principal's failure to dissent within reasonable time after learning what had been done); *Hardin, Rodriguez & Boivin Anesths., Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 634 (7th Cir. 1992) (principal ratifies contract made by agent when, with knowledge of all material facts, it fails to disaffirm contract within reasonable time and accepts benefits of contract); *Progress Printing Corp. v. Jane Byrne Political Comm.*, 601 N.E.2d 1055, 1067 (Ill. App. Ct. 1992) (ratification may be inferred from long-term acquiescence to benefits of unauthorized transaction).

In short, as the evidence now stands, it is insufficient to demonstrate either that Duquette had actual or apparent authority to enter into the contract with Lakeside or that the Town ratified the contract after the fact. Accordingly, we reverse the superior court's determination that Lakeside is entitled to summary judgment. On remand, the parties may present further evidence concerning the legal questions examined above, but absent additional evidence demonstrating that actual or apparent authority existed, or that the Town ratified the contract, Lakeside cannot prevail. Because of our disposition of the jurisdictional issue, we need not consider the Town's remaining arguments.

*Reversed and remanded.*