2004 VT 84

**LAKESIDE EQUIPMENT CORP. v. TOWN OF CHESTER**

[865 A.2d 422]

No. 03-193

¶ 1. August 19, 2004. This is the second appeal in this case, which concerns plaintiff Lakeside Equipment Corporation's attempt to domesticate an Illinois judgment requiring defendant Town of Chester to pay Lakeside for equipment the company specially manufactured for the Town's waste water treatment facility. In

---

the first appeal, we reversed the superior court's judgment in favor of Lakeside and remanded the matter for the court to take additional evidence on whether the Town's plant operator, who ordered the equipment from Lakeside, had actual or apparent authority to do so — in which case the Illinois judgment would be jurisdictionally sound. *Lakeside Equip. Corp. v. Town of Chester*, 173 Vt. 317, 326, 795 A.2d 1174, 1182 (2002) [hereinafter *Lakeside I*]. On remand, the trial court entered judgment for the Town after determining that the plant operator did not have either actual or apparent authority to purchase the equipment on the Town's behalf, and that the Town never ratified the purchase. We reject each of Lakeside's arguments on appeal and affirm the superior court's judgment.

¶ 2. The facts of this case are detailed in *Lakeside I*. In April 1996, David Duquette, the plant operator of the Town's waste water treatment facility, placed a verbal order with Lakeside, a Delaware corporation based in Illinois, to purchase replacement clarifiers for the facility. Lakeside sent Duquette a letter acknowledging the order and itemizing the cost of the equipment, which totaled approximately $40,000. Duquette eventually gave Lakeside a purchase order number, although apparently the number had been issued for an unrelated purchase. In response to Duquette's order, Lakeside designed and specially manufactured the equipment, and Duquette accepted delivery of the clarifiers in late June 1996. When Lakeside contacted Susan Spaulding, the Chester Town Manager, in late July 1996 to ask about payment for the equipment, Spaulding indicated that the Town would pay the bill within a week. One week later, however, after examining the bill and meeting with the town selectboard, Spaulding informed Lakeside that the Town would not pay for the equipment because Duquette had not been authorized to purchase it. The Town

never used the clarifiers, and Lakeside refused to take them back.

¶ 3. Lakeside eventually .obtained an arbitrator's award, which was later confirmed by an Illinois court, and commenced the present action in the superior court to domesticate the Illinois judgment. The superior court granted summary judgment to Lakeside, and the Town appealed, arguing that Illinois lacked jurisdiction over a Vermont town based upon a contract entered into by an unauthorized agent. We held that although the making of a contract in Illinois would give jurisdiction to Illinois courts to render a personal judgment based on breach of that contract, there were disputed issues of material fact bearing on whether Duquette's actions in entering into the contract could be imputed to the Town. *Lakeside I*, 173 Vt. at 324, 795 A.2d at 1180. As a result, we remanded the case for the trial court to take evidence and determine whether Duquette had actual or apparent authority to purchase the equipment, and whether the Town later ratified the agreement reached by Duquette and Lakeside. *Id.* at 326, 795 A.2d at 1182.

¶ 4. On remand, following an evidentiary hearing, the superior court refused to enforce the Illinois judgment, ruling that Illinois lacked personal jurisdiction over the Town because no contract ever existed between Lakeside and the Town. The court based this determination on its conclusion that Duquette had neither actual nor apparent authority to purchase the equipment on behalf of the Town, and that the Town never ratified the agreement between Duquette and Lakeside. On appeal, Lakeside argues that the superior court erred by concluding that Duquette had neither actual nor apparent authority to purchase the equipment; and by failing to find either that the Town was estopped from denying Duquette's authority to purchase the equip-

ment or that a valid contract was created under the Uniform Commercial Code.

¶ 5. Lakeside first argues that Duquette had express actual authority to purchase the clarifiers. To support this argument, Lakeside relies primarily on Duquette's testimony that Susan Spaulding authorized him in April 1996 to purchase two sets of replacement parts for the clarifiers, and that Duquette supplied Lakeside with a purchase order number. The deficiency in Lakeside's argument is that it ignores the trial court's unchallenged findings supporting the conclusion that neither Spaulding nor any other town official authorized Duquette to purchase the clarifiers. The court found that (1) the town selectboard and town manager had the authority to make purchases within the budget approved by the voters; (2) the budget approved by town voters in March 1996 for the 1996-1997 fiscal year limited capital expenditures for the waste water treatment facility to $9100; (3) an unwritten town policy authorized the town department heads to make purchases, including capital improvement purchases, within their budgets but without the town manager's prior approval, of up to $500; (4) purchase order authorization numbers were issued when the town manager approved any purchase over $500; and (5) because Duquette had failed to comply with purchasing procedures in the past, he was limited to making purchases of $300 or less without the town manager's approval. Further, the court found credible Spaulding's testimony that neither she nor the selectboard ever authorized Duquette to purchase the clarifiers or issued any purchase order for the equipment. Given these findings, Lakeside cannot prevail on its claim that Duquette had express actual authority to purchase the clarifiers.

¶ 6. Lakeside argues, however, that Duquette had implied actual authority to make the purchase. See *New England*

*Educ. Training Serv., Inc. v. Silver St. P'ship*, 148 Vt. 99, 103, 528 A.2d 1117, 1119 (1987) (defining implied authority as actual authority circumstantially proven from facts and circumstances surrounding transaction in question). Implied actual authority focuses on whether the principal's actions led the agent to reasonably believe that the principal wanted the agent to act on behalf of the principal with respect to the conduct in question. *Sinclair v. Town of Bow*, 480 A.2d 173, 177 (N.H. 1984). According to Lakeside, the evidence presented at the hearing on remand demonstrated the reasonableness of Duquette's stated belief that the town manager had authorized him to purchase the clarifiers. In support of this argument, Lakeside cites evidence indicating that the Town had a five-year plan to refurbish its waste water treatment facility, that in the spring of 1996 Spaulding approved replacement of certain parts for the clarifiers, and that Spaulding indicated in a town report that replacement of the clarifiers would begin in 1996. As Lakeside acknowledges, implied authority is actual authority based on the facts and circumstances present. Here, the trial court analyzed the facts and circumstances in reaching its conclusion that no actual authority existed. Central to the court's conclusion was its resolution of the conflict between the testimony of Duquette and Spaulding. The court's findings indicate that it accepted Spaulding's version of events. In these circumstances, Duquette's subjective belief, even if found credible, cannot prevail over the court's findings.

¶ 7. Next, Lakeside argues that the trial court erred by concluding that Duquette did not have apparent authority to purchase the equipment. As Lakeside acknowledges, apparent authority "'derives from conduct of the principal, communicated or manifested to the third party, which reasonably leads the third party to rely on the agent's authority.'"

*Lakeside I*, 173 Vt. at 325, 795 A.2d at 1181 (quoting *New England Educ. Training Serv., Inc.*, 148 Vt. at 105, 528 A.2d at 1120). Moreover, as we noted in *Lakeside I*, the parameters of the doctrine of apparent authority are "'sharply circumscribed when the principal is a municipal corporation.'" *Id.* (quoting *City of Norwalk v. Bd. of Labor Relations*, 538 A.2d 694, 696 (Conn. 1988)). In this case, there is no evidence of any conduct or communication by the Town directed to Lakeside that would have led the company to conclude that Duquette was authorized to purchase the clarifiers. Further, the trial court found that there was no contact between any town officers and Lakeside, and that Lakeside made no inquiry into the nature and extent of Duquette's authority. Under these circumstances, notwithstanding Lakeside's claim that it was standard practice for the company to purchase equipment through town plant operators, the trial court correctly concluded that Lakeside could not prevail on a theory of apparent authority. See *Doe v. Forrest*, 2004 VT 37, ¶ 23, 176 Vt. 476, 853 A.2d 48 (agent's words or conduct cannot create apparent authority; rather, such authority may be found where third party relies upon agent's misrepresentation because of some misleading conduct by *principal*); *Sinclair*, 480 A.2d at 176 (anyone dealing with agent of municipality has duty to ascertain nature and extent of agent's authority).

¶ 8. Lakeside also argues that the Town of Chester should be estopped from refusing to pay for the equipment. We have already rejected Lakeside's claim of apparent authority, which rests on the general principle of estoppel. See *Sinclair*, 480 A.2d at 176. Like the doctrine of apparent authority, estoppel is applied against the government "only in rare instances" when the elements of estoppel are met and the injustice that would result from denying estoppel out-

weighs any negative impact on public policy that would result from applying the doctrine. *Larkin v. City of Burlington*, 172 Vt. 566, 569, 772 A.2d 553, 558 (2001) (mem.). Here, Lakeside does not even list, let alone examine, the elements of estoppel. In any event, none of the evidence presented at the hearing on remand demonstrates that the Town knew of Duquette's purchase of the clarifiers beforehand, that Lakeside relied upon some conduct by the Town, or that the Town intended any such conduct to be acted upon. See *Town of Victory v. State*, 174 Vt. 539, 540, 814 A.2d 369, 372 (2002) (mem.) (setting forth elements of equitable estoppel).

¶ 9. Finally, we find no merit to Lakeside's argument that a valid contract was formed between Lakeside and the Town under § 2-201(3) of the Uniform Commercial Code (UCC). See 9A V.S.A. § 2-201(3). Section 2-201(3) sets forth exceptions to when written formalities are required for an agreement to be enforced. One of those exceptions is when, under circumstances reasonably indicating that the goods are for the buyer, the seller has made specially manufactured goods not suitable for sale to others in the ordinary course of the seller's business. See *id.* § 2-201(3)(a). As noted in a leading treatise on the UCC, however, although the exceptions in § 2-201(3) contemplate enforcement of oral contracts under certain circumstances without written formalities, each of those exceptions require that a valid oral contract be proved. See 1 J. White & R. Summers, Uniform Commercial Code § 2-5, at 70 (4th ed. 1995). Here, Lakeside's UCC argument begs the question of whether a valid contract was formed between the Town and Lakeside — which returns us to the question of whether Duquette had actual or apparent authority to act on behalf of the Town. Thus, Lakeside misplaces its reliance on *L.V. Appleby, Inc. v. Griffes*, 160 Vt. 601, 601-02, 648 A.2d 808, 809 (1993) (mem.), in which the trial court made an unchallenged finding that the parties had entered into a valid contract.

*Affirmed.*

Motion for reargument denied December 16, 2004.

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.